## ALBRECHT GEHRKE v. THE STATE.

Where the prisoner, on trial for murder, " offered to show by witnesses (not medi-
"cal men) that they were conversant with persons well known to be insane, and
"that the conduct and appearance of the prisoner were like such as they had
"observed in the said insane," it was held that the testimony was properly rejected.

Where, on a trial for murder, the Court excluded from the consideration of the jury such expressions of the witnesses (not medical men) as that he, the prisoner, looked and acted like one insane, in their opinion, it was held there was no error.

Under our statute, which divides the crime of murder into murder of the first degree and murder in the second degree, wherein it is provided that "all murder "committed by poison, starving or torture, or other premeditated or deliberate "killing, or committed in the perpetration or in the attempt at the perpetration of "arson, rape, robbery or burglary is murder in the first degree, and all murder "not of the first degree is of the second degree," and the jury is required to find whether it is murder in the first or second degree, a conviction of murder in the first degree is regular, although the indictment be simply in the Common Law form, without any further charge or description corresponding with the statute.

Appeal from Harris. The appellant was convicted of murder in the first degree, for killing his wife. The evidence showed that they had been married about a year ; that the deceased left the prisoner and refused to live with him about two weeks before the killing ; that the prisoner, being of a weak mind at best, quit work, went about inquiring of persons how he could get her back ; that on the day of the killing they were

seen passing a certain point in the city, (Houston,) he urging her to consent to something, (witness could not hear what,) and she refusing; about two hundred yards further on, they were observed by other witnesses, she a little in advance; she quickened her pace, he quickened his; she ran; he ran and overtook her; threw her down and struck at her as if he was stabbing her; witnesses ran up, and saw he was armed with a knife with a blade about four inches long; struck at his breast as if trying to stab himself, but struck with the handle instead of the blade; made off, and ran and jumped into the bayou; was found in the bayou entangled in, or holding on to drift-wood; when a rope was thrown to him, took hold of it and was pulled out. The deceased was found mortally wounded, and soon afterwards expired; one wound pierced the pricardium. In answer to a question who did it, she said her husband. The jury found a verdict of guilty of murder in the first degree.

There was a bill of exceptions in the record as follows: Be it remembered, &c., the prisoner offered to show by witnesses (not medical men) that they were conversant with persons well known to be insane, and that the conduct and appearance of the prisoner were like such as they had observed in the said insane; but the Court ruled that such testimony was incompetent.

Be it further remembered that the Court excluded from consideration of the jury such expressions of the witnesses as that he, prisoner, looked and acted like one insane, in their opinion.

There was a motion in arrest of judgment, on the ground that the indictment did not charge the homicide to have been committed by poison, starving, or torture, or that it was committed in the perpetration, or in the attempt at the perpetration of arson, rape, robbery or burglary, nor that it was committed by premeditated and deliberate killing.

The indictment did not contain the word deliberate, or deliberately. The motion was overruled.

The Judge instructed the jury at considerable length; and

the prisoner's counsel asked fifteen short instructions, which the Judge declined to give, " because many of them were already given, and some of them were inapplicable to the case." But, as no particular error in respect of either the instructions given or those refused, was urged on the appeal, they are omitted.

*A. P. Thompson,* for appellant. 1st. The indictment is defective for conviction of murder in the first degree, because the offence is not charged to be both premeditately and deliberately.

2nd. The testimony offered on behalf of the prisoner, as specified in the bill of exceptions was improperly excluded by the Court below.

3rd. The Court below erred in its charge, because the charges argumentative encroaches on the regions of facts and is calculated to mislead the jury.

4th. The charges asked for by the counsel for the prisoner were improperly refused.

5. The testimony does not justify a verdict of murder in the first degree.

Acts of the fifth Legislature, page 72, Hart. Dig. Art. 2515; Id. 2405, Article 753, amendment fourth Legislature, page 19; Starkie's Criminal Pleading *in loco.* Roscoe's Criminal Evidence in the report of the Judges in reply to the inquiries of the House of Lords upon the law of insanity, especially the opinion of the dissenting Judge.

The defendant is not charged to have perpetrated the act " deliberately," but " premeditately" only; he must have done it *pendente animo et cum animo,* characterized simultaneously by both these epithets, or the crime contemplated by the statute is not consummated.

" Premeditately " implies that the accused had before the act contemplated its execution, that he had premeditated upon it; but it does not imply necessarily any mental determina-

tion or conclusion; the crime therefore, contemplated by the statute, could not be consummated if done merely after premeditation; it must appear and it must be charged that it was done "delliberately," in pursuance of and in continuation and execution of such "premeditation."

He may have premeditated, but abandoned the act. He may have premeditated it at one time, and at a later period perpetrated it upon a sudden impulse—wholly uninduced—unaffected by his previous premeditation. Unless he did "premeditately" and "deliberately" execute in pursuance of such premeditation, he did not not commit murder in the first degree. He is not so charged. He cannot be so adjudged. Under this indictment he cannot be presumed to have deliberately acted. It is not averred. The words differ widely in signification.

*Attorney General,* for appellee. I. The first point in the assignment of errors is "That the Court erred in excluding testimony offered by the prisoner on his trial." The bill of exceptions, upon which this point rests, shows, in effect, that the Court excluded from the jury opinions and expressions indicating opinions of persons not skilled in the matter, in regard to the sanity of the prisoner especially in view of the fact that medical men were examined in the case by defendant on other matters, showing that they were acquainted with his condition, but whom the defendant declined, or, at least, failed to examine touching his sanity. This ruling of the Court is too clearly and elementarily correct to admit of discussion.

II. The second position in the assignment is that the Court erred in overruling the motion of defendant for a new trial. As to the action of the jury upon the facts of guilt in this case, it is so terribly well sustained as to leave no ground for doubt or hesitation.

III. The charge of His Honor Judge Gray is so correct, clear, comprehensive and explicit, "covering the case all over

with the law as with a mantle," as, taken in common with the evidence, to leave nothing for discussion or even possible carping.

IV. " Overruling motion in arrest." This is based upon the assumption that an indictment to authorize a conviction of murder in the first degree ought to differ in its averments from one, at Common Law, for murder. This is a mistake. (Whart. Am. Crim. Law (2nd edition) p. 410, INDICTMENT.)

LIPSCOMB, J. The appellant was convicted of murder in the first degree, and judgment of death awarded upon the conviction, from which the prisoner prosecuted an appeal to this Court.

The first error assigned is, in excluding testimony offered by the prisoner at his trial. It appears from the record that the evidence rejected by the Court, was an offer to prove (not by medical men) that " they were conversant with persons " well known to be insane, and that the conduct and appear-" ance of the prisoner were like such as they had observed in " the said insane," and further excluded from the jury expres-" sions of the witnesses (not medical men) " as that the pris-oner looked and acted like one insane."

The first was an effort to prove, not by the knowledge of the witness of the fact of insanity, but by comparison of some other insane person that witness said he knew and that such person was well known to be insane; to have permitted the reception of such evidence, would have been improper, because it was allowing the witness to assume, without the means of contradiction, the hypothesis that his original was really insane, and then prove the truth and faithfulness of the like-ness in the person of the prisoner, without the means of con-tradiction.

It would have been equally improper to have received as evidence the vague, indefinite expression of a witness, that prisoner looked like, or acted as an insane person. The record shows that gentlemen distinguished in the profession were

present, and examined as witnesses as to the nature of the wound, and might have been examined by the prisoner's counsel on the subject of the insanity of the prisoner, had they wished to have done so. We have examined the evidence in relation to the insanity of the prisoner, and the charge of the presiding Judge in reference to it. The evidence proves the prisoner to be a man not of remarkably strong mind, but not the slightest ground to support the proposition, that his mental imbecility was such as to relieve him from responsibility and punishment for a criminal act. The charge of the Court on the question, we regard as a faithful, and an able declaration of the law applicable to the fact proved.

The second error assigned is, the overruling the motion for a new trial. We find nothing in the evidence, nor in the directions of the Court to the jury, that would have authorized the granting a new trial.

The third error assigned is the only one that requires much consideration, and that cannot, at this day, be regarded as presenting any serious difficulty. It is presented by the motion in arrest of judgment, which was overruled by the Court below. It presents this question, does one Act of the Legislature, dividing the offence of murder into two classes, the first and second, in any manner change the Common Law offence of murder, so as to require a different structure of the charging part of the indictment as to the malicious intent? The prisoner's counsel insists, that a difference has been made, and that certain words should now be used in the indictment, not required at Common Law; and he founds his argument on the first part of the Article in the Digest (Art. 2515) defining what shall constitute murder in the first degree, i. e.: "That all murder committed by poison, starving or torture, or other premeditated or deliberate killing:" that an indictment not for poison, starving or torture, from which death ensues, should allege that it was done premeditately and deliberately; these words, it is said, should be separated from the context and be so interpreted as to constitute a distinct and

substantive definition. In several of the States they have statutes not materially differing from our own, and some of them precisely in the same words, in classifying murder. Mr. Wharton, on his work on American Criminal Law, has reviewed those statutes and the adjudications under them, from which the conclusion is drawn that they change not the Common Law definition of the offence, and that under the expressions used, any killing with premeditated malice, not enumerated in the statute, would be murder at Common Law, and could be tried under the statute. (Wharton's American Criminal Law, commencing page 417, Chap. IX.)

The gist of the crime of murder is malice; and the words wilfully, aforethought, cooly, deliberately, premeditately, are expressive of the facts attending the killing, and are indicia of malice, and all relate to the state of the mind when the offence is committed. If the malice is charged in the indictment, there is no necessity for stating the evidence of the malice: this is matter to be proven on the trial, to sustain the malicious intent.

We believe there was no error in refusing to arrest the judgment, on the ground that the indictment had not followed the statute and alleged that the killing was done premeditately and deliberately.

The whole charge of Judge Gray is characterized by industry, accuracy, judicial learning and a conscientious discharge of official duty, seldom equaled and never surpassed, and it may well be commended to other Judges as an example worthy of being studied and followed. There is nothing in the record to authorize a reversal of the judgment, and it is therefore affirmed, and ordered to be certified to the Court below for execution, agreeably to the statute in such case provided.

Judgment affirmed.