JASON THOMAS V. THE STATE.

1. Upon the issue of insanity, non-professional witnesses should be allowed to give their opinions, together with the facts on which their opinions are based, where it appears that their acquaintance with the defendant will enable them to form a correct estimate of his mental condition.

2. The test of responsibility on such issue is said to be, whether the party was able to have, and did have, a criminal intent, and the ability to judge of the right and the wrong of the act charged.

3. It is the duty of the court in felony cases, where insanity is interposed as a defense, to instruct the jury upon the principles of law applicable to the case, whether asked or not.

APPEAL from Lavaca. Tried below before the Hon. W. H. Burkhart.

Thomas was indicted at October term, 1872, of the District Court of Lavaca county, for stealing a plug of tobacco, worth forty cents, from the house of August Weller.

The plea of insanity was urged on the trial, and the counsel for defendant propounded to two witnesses, Hiram Griffith and W. B. Rhodes, the following questions, viz.:

"If you are acquainted with the mental status of the defendant, state your opportunity for such acquaintance; also state your opinion of his mental capacity at the date of the alleged offense, and the facts and circumstances upon which you have founded your opinion."

Which question, on objection of the district attorney, was excluded on the ground that the witnesses' opinions were inadmissible; the court ruling that the witnesses could state the facts and circumstances on which their opinions were based, but could not state their opinions or belief in the matter.

The court submitted to the jury, upon the question of insanity, whether the defendant "was of sufficient mental capacity to discriminate between right and wrong."

The defendant was convicted, and appealed to this court.

O. Ellis, for appellant.—It is confidently contended that the court erred in refusing to permit witnesses to state their opinion of the mental capacity of the defendant. "In reason, any witness who is sufficiently ac-

quainted with the prisoner to know his mental condition as sane or not, should be permitted to testify to the fact, as well as to collateral facts, from which the main fact is inferable." (Bishop on Criminal Procedure, Section 667, Vol. 2, 2d Ed.) "When we look at this question in the light of judicial authority, we find that a large, and indeed much the larger, class of judges in this country do permit the witnesses who are not experts, as well as the experts, to state whether or not they deem the prisoner insane, in connection with their statements of the particular conduct and expressions which form the basis of their judgment." (See Bishop on Criminal Procedure, 2d Vol., 2d Ed., Sec. 678; Dewitt v. Barly, 17 N. Y., 340; Lester v. Pittsford, 7 Vt., 158; Morse v. Crawford, 17 Vt., 499; Grant v. Thompson, 4 Conn., 203; Culver v. Haslam, 7 Barb., 314; Stewart v. Redditt, 3 Md., 67; Weems v. Weems, 19 Md., 334; Baldwin v. The State, 12 Mo., 223; Kelly v. McGuire, 15 Ark., 555; Clark v. The State, 12 Ohio, 483; Roe v. Taylor, 45 Ill., 485; The State v. Felter, 25 Iowa, 67; White v. Bailey, 10 Mich; see also the dissenting opinion of Doe, J., in the New Hampshire case of The State v. Pike, and authorities cited, reported in 6 Am. Reports, page 544.)

The decision of the Supreme Court of this State in Gehrke v. The State, 13 Texas, 568, is not believed to be in point. The witness did not propose to testify in regard to his opinion of the defendant's sanity, but merely that in his opinion he acted like certain parties whom witness knew to be insane.

*Geo. Clark, Attorney-General*, for the State.—It is believed that the law as laid down by the court is correctly stated, and is in accordance with the decision of this court in the case of Hickman v. The State, decided May 19, 1873, and with the general current of authority. (Greenleaf on Ev., Vol. 3, Sec. 5 ; Gehrke v. The State, 13 Texas, 568 ; Bish. Crim. Prac., Ch. 33, p. 666.)

REEVES, ASSOCIATE JUSTICE.—Indictment for theft of one plug of tobacco, of the value of forty cents, alleged to be the property of August Weller, and taken from his store house. Verdict of guilty, and confinement in the penitentiary for two years.

Insanity of the defendant and other defenses were relied upon under the plea of not guilty.

On the trial of the defendant the court refused, on objection made by the district attorney, to permit the witnesses to state to the jury their opinions of the defendant's mental capacity at the date of the alleged offense. He also asked the witnesses to state if they were acquainted with the mental status of the defendant, and to state their opportunity for such acquaintance.

The court ruled that the witnesses might state the facts and circumstances upon which their opinions were based, but not their opinions or belief. The defendant excepted to the ruling of the court and saved the point by bill of exception, and after conviction moved for a new trial on that and other grounds stated in his motion, complaining of error in the general charge to the jury, for refusing the charge asked by the defendant, that the verdict was contrary to the law and the evidence, and because of newly-discovered evidence.

The authorities are not in harmony on the question as to what constitutes insanity of mind. It is agreed that a man must have sufficient capacity and reason to enable him to distinguish between right and wrong, as to the particular act he is then doing—a knowledge and consciousness that the act he is doing is wrong and criminal and will subject him to punishment. (Carter v. The State, 12 Texas, 500; 2 Greenleaf's Evidence, Sec. 372.)

The true test is said to be, "whether the party was able to have, and did have, a criminal intent, and the ability to judge of the right and the wrong of the act charged." (Whart. Am. Cr. Law, 13, 507.)

The code provides that "no act done in a state of insanity can be punished as an offense." (Pas. Dig., Art. 1643.)

The general rule is, that the opinion of a witness is not evidence; but, like all general rules, it has exceptions. The exception embraces certain subjects and certain classes of witnesses. Great embarrassment has been felt in defining the subjects and the class of witnesses who may be permitted to give their opinions to the jury to the exclusion of others who are required to state the facts only within their own knowledge.

On subjects of science, skill, or trade, witnesses called experts are admitted to testify from the peculiar knowledge they are supposed to have. Hence it is that the opinions of medical men, as one class of witnesses, are received in evidence to explain the cause of disease or of death, the consequences of wounds, and as to the sane or insane state of a persons mind. And therefore it is said "such opinions are admitted in evidence, though the witness founds them, not on his own personal observation, but on the case itself, as proved by other witnesses on the trial." (1 Greenleaf's Ev., Sec. 440.)

As a qualification of the general rule that a witness must depose to facts only within his own knowledge, he may express his belief of the identity of a person, or that the handwriting in question is or not the handwriting of a particular individual, provided he has any knowledge of the person or the handwriting.

The analogy in the investigation of these questions and other questions, where direct evidence is not attainable, has been applied to inquiries respecting the condition of a party as sane or insane, and the opinions of non-professional witnesses, together with the facts on which their opinions are founded, have been admitted as evidence.

"The value and force of the opinion," as said by the court, in Calver v. Harlan, 7 Barbour, 314, "would

depend on the general intelligence of the witness, the grounds on which it is based, and the opportunities he has had for accurate or full observation." (Dewitt v. Bailey & Schoonmaker, 17 New York, 340; Morse v. Crawford, 17 Vermont, 499; Grant v. Thompson, 4 Conn., 203; Baldwin v. The State, 12 Mo., 223; 2 Bishop on Criminal Procedure, Secs. 676-7-8; Clary v. Clary, 2 Ired., 78; Powell v. The State, 25 Ala., 21; Flory v. Flory, 24 Ala., 241; Norris v. The State, 16 Ala., 776; Clark v. The State, 12 Ohio, 483; Ohio Digest, title Experts—Opinions, p. 284.)

The views here expressed are not in conflict with the case of Gehrke v. The State, 13 Texas, 568. That case is not in point.

We think the witnesses should be allowed to give their opinions, together with the facts on which their opinions were based, where it appears that their acquaintance with the party will enable them to form correct opinions of his mental condition.

There can be no doubt about the admissibility of the opinions of medical men in such a case as this, but the testimony of the physician is not satisfactory, as shown by the record. The examination was a brief one, and the opinion was formed from the answers of the defendant to certain questions, without hearing the evidence in the case, as inferred from the evidence of the witness, and without acquaintance with defendant's past life, and apparently without information in regard to it, his only means of information being a brief examination just had in the court house.

It cannot be determined how far the jury may have been influenced by the opinion in evidence before them. The opinions of medical men are received with great respect and consideration, and properly so. But there is reason to apprehend that the examination of the defendant was not of such a character as would furnish full in-

formation for an opinion upon which the jury could arrive at a proper conclusion.

The law as applicable to the defense of insanity is not charged with sufficient clearness, and which must be done in cases of felony, whether asked for or not.

In Carter v. The State, 12 Texas, 500, the court refers to the case of The United States v. McGlue (1 Curtis, U. S. C. R., 1; Law Magazine, Vol. 2, No. 4), where the defense was insanity, and quotes with approbation the charge of the court to the jury for the principles of law applicable to the defense:

"In the course of the charge it was observed," says the court, quoting the charge, "that this defense of insanity is to be tested and governed by principles of law, and not by any loose general notions which may be afloat in the community, or even the speculations of men of science." Of the kind and degree of insanity which exempts from punishment, it is said: "Clearly, it is not every kind and degree which is sufficient. There are, undoubtedly, persons of great general ability filling important stations in life who, upon some one subject, are insane. And there are others whose minds are such that the conclusions of their reason and the result of their judgment are very far from being right. And others, whose passions are so strong, or whose conscience, reason and judgment are so weak or perverted, that they may in some sense be denominated insane. But it is not the business of the law to inquire into these peculiarities, but solely whether the person accused was capable of having, and did have, a criminal intent. If he had, it punishes him; if not, it holds him dispunishable. And it supplies a test by which the jury is to ascertain whether the accused be so far insane as to be irresponsible. That test is the capacity to distinguish between right and wrong as to the particular act with which he is charged."

We think the charges given to the jury in this case

were imperfect by reason of the omission to charge upon the principles of law applicable to the case with the distinctness the law requires; and in that view of the case, the verdict is not supported by the law and the evidence. (Pas. Dig., Art. 3059.)

The newly-discovered evidence, as one of the grounds of the motion for a new trial, was merely cumulative, and if there had been no error in the rulings of the court and in the charge to the jury, would not be sufficient to warrant a new trial.

The judgment is reversed and cause remanded for further proceedings.

REVERSED AND REMANDED.

Justice Gray was not present and did not participate in this decision.