## THOMAS SANDERS v. THE STATE.

CHARGE OF THE COURT—MURDER.—On a trial for murder, the law applicable to the case *must* be distinctly set forth in the charge, whether asked or not; and a failure to define murder in the second degree, in a case where the jury, upon the evidence, might have found the defendant guilty of the less offense, will be cause of reversal, whether the instructions were asked or not.

APPEAL from Collin. Tried below before the Hon. W. H. Andrews.

*Joseph Bledsoe,* for appellant.

*George Clark, Attorney General,* for the State.

REEVES, ASSOCIATE JUSTICE.—The indictment, in substance, alleges that Thomas Sanders, on the 28th day of December, 1871, in Collin county, of his malice aforethought, feloniously killed and murdered James Huffhines in the manner therein set forth. These are material allegations to be proved by the prosecution. For the State it is contended that the death of Huffhines resulted from the deliberate and wicked act of Sanders. For him it is urged that the death resulted from an accidental cause. To decide on the intent with which an act is done, in the

administration of criminal law, is often not less embarrass-
ing to courts and juries than their decision on questions
involving proof of the *corpus delicti*, and the identity of the
prisoner, when put in issue. That the deceased came to
his death by the act of the prisoner is not denied. When
first questioned, his answers were evasive, but finally he
stated to Mrs. Huffhines that he had shot her husband, but
he said it was an accident, as she stated on a former trial,
as proved by other witnesses.

The prevarication of the accused, and the motive for it,
may have resulted either from a consciousness of guilt, or
may have been prompted by a sense of terror arising from
his situation, without any definite line of conduct. The
weight of the evidence, as tending to establish either prop-
osition, and the force of the conviction, as being either
weak or strong, must, to a great extent, depend upon what
may be known of the prisoner, his temperament, habits of
life, and attending circumstances. Though collateral in-
quiries to the main charge, they are important in searching
for the motive, and to arrive at a just conclusion, so far as
may be done in the light of the evidence in the case.
Whether the circumstances explain the case satisfactorily,
and show the act to be accidental or intentional, must be
decided upon a careful comparison and consideration of all
the facts in evidence. It is not intended to give a full sum-
mary of the evidence, but so far only as may be necessary
for the purposes of this opinion. It appears that Sanders
was living with the deceased as a member of his family.
On the night he was killed, Sanders told him that he had
seen a man going across the field in the direction of the
wheat where his horses were grazing. Sanders and the
deceased went out of the house to see about the horses,
Sanders taking his pistol with him. The report of a pistol
was heard by Mrs. Huffhines a few minutes after they went
out. Sanders returned to the house alone. His answers
to Mrs. Huffhines' questions about her husband were evas-

ive and unsatisfactory, saying he would be in after awhile; not to fret about him. After going out again, he returned to the house in five or ten minutes, and said to Mrs. Huffhines, "This is the way I was holding my pistol (showing how it was) when it went off and shot Jim, (the deceased.) It was proved that Mrs. Huffhines testified on a former trial of this case that defendant told her on his return to the house that his pistol went off accidentally. It was shown that defendant and the deceased were "on the very best terms," in the language of one of the witnesses. One witness speaks of defendant as being a strange person; that he was very lively; most always singing, whistling, and dancing, except at times, when he would be quiet, and have but little to say. While in the employ of this witness he would get up and go out of the house at night, saying somebody was after the horses, as he was in the habit of doing while living with the deceased. On the other hand, his statement that he saw a man going across the field towards the horses on the night of the killing was rebutted by evidence that no tracks were found next morning when the ground was examined.

It will be necessary to examine the charge, and see whether the jury should have been instructed upon the degrees in murder more fully than was done in the charge by the court. Murder is defined by the charge, and also the difference between murder in the first and second degrees, in the language of the statute. The court further instructed the jury, if they should find the defendant guilty of murder, to find the degree of murder and to assess the punishment, and that the punishment of murder in the first degree is either death or confinement in the penitentiary for life, but fails to inform the jury of the punishment for murder in the second degree. The effect of the charge was to limit the finding of the jury to murder in the first degree or to an acquittal, there being no direction as to the penalty for murder in the second degree. Where there

may be a question whether the homicide was committed on express malice or on malice implied, it is necessary to explain these terms and in what the difference consists, and the difference between murder in the first and murder in the second degrees, as the penalty is different. The chief ingredient in malice express is the deliberately formed design to kill another, and is proved by circumstances attending the act, as former hostility, a previous quarrel, a grudge or concerted scheme to do him some bodily harm, and the like. Implied malice is a conclusion of law upon the facts found by the jury. (Atkinson v. The State, 20 Tex., 522; McCoy v. The State, 25 Tex., 33; 3 Greenl. Ev., § 145.)

The punishment assessed by the jury should have respect to the degree in murder of which the defendant may be convicted. Murder on express malice is murder in the first degree, and the punishment is death or imprisonment to hard labor for life, in the discretion of the jury. Murder of the second degree is punished by confinement in the penitentiary, but may be for a shorter period than life, as the jury may decide.

No instructions were asked by the defendant, nor was the charge as given excepted to or assigned as error, except in so far as it may be considered as being embraced in the assignment, alleging error in overruling the motion for a new trial, on the ground that the verdict was contrary to law. And it is now insisted that the objection to the charge comes too late. In felony, the law applicable to the case must be distinctly set forth in the charge, whether asked or not.

The jury not being instructed as to the punishment for murder of the second degree, and because the verdict of the jury is not satisfactory, and may have been influenced by the error in the charge, we are of opinion that the motion for a new trial should have been granted. The judgment is therefore reversed and the cause remanded.

REVERSED AND REMANDED.