ARCH PERRY V. THE STATE.

1. EXPRESS MALICE in an indictment for murder is sufficiently charged by the words "with malice aforethought."
2. VERDICT.—A verdict for murder in the first degree is not vitiated by its containing a clause fixing the penalty of death.
3. VARIANCE.—This court will not consider the word "freedman," following the name of the deceased in the indictment, as forming part of the name of deceased, when the question was not raised below, and where the same addition follows the name of the accused.
4. BURDEN OF PROOF IN CRIMINAL CASES.—In criminal cases the burden of proof is not on the defendant in the sense understood in civil cases; the reasonable doubt extends to the entire case, and the presumption of innocence must be overcome by the prosecution before a conviction can be had.
5. CHARGE OF COURT.—Held error to instruct the jury, on a trial for murder, "that the law implies malice in case of unlawful killing by means calculated to produce death, and in such case the burden of proof is on the defendant, if he would reduce the offense to a lower grade than murder in the second degree." The burden of proof is never cast upon the accused in the sense that the State is at any time relieved from proof of the facts constituting any degree of criminal offense.
6. SAME.—An instruction to the jury upon a case of a conflict brought on by the accused, giving only the law applicable if the conflict had been brought on with intent to kill, is erroneous; the failure to instruct upon the law had the conflict been brought on for any other purpose might convey to the jury the impression that the conflict had been brought on with intent to kill.
7. See facts in which it was held that the definition of murder in the second degree was not sufficiently given to the jury.

APPEAL from Matagorda.    Tried below before the Hon. W. H. Burkhart.

The facts are fully given in the opinion.

*Asa E. Stratton,* for appellant. I. The verdict is informal. It assesses punishment in case where the law specially imposes it. (Paschal's Dig., art. 2271.) Under art. 5, sec. 8, Constitution of Texas, the jury are not to assess punishment when the same is specially prescribed by law. (See also 1 Cranch, 50.) Paschal's Dig., arts. 3092, 3093, prescribes the time and mode of correcting informal verdict in criminal cases. If not done as therein prescribed, informality inures to defendant's benefit. There can be no legal judgment unless the verdict is formal; it is the basis of the judgment.

II. The verdict is contrary to the evidence. The homicide was committed during a quarrel and scuffle. Homicide done in actual conflict is but manslaughter. (Whart. Am. Cr. Law, sec. 935.)

Under the rule that the defendant is entitled to all substantial doubts, is it not a reasonable conclusion to say that the homicide was committed under fear of death or bodily harm rather than from " express malice? " Fear of death or bodily harm justifies homicide. (Paschal's Dig., art. 2229.) No retreat necessary. (Paschal's Dig., art. 2230.)

III. Name of deceased was not proven as alleged. (26 Tex., 113.) Isaac Thomas Freedman and Isaac Thomas are no more the same name than were Edward Toney and Edward Toney Joseph Scott. (13 Tex., 74.) It was decided that they were not the same.

IV. The indictment is insufficient. It neither charges that the killing was "unlawfully" done or that the deceased was "a reasonable creature in being in this State." (Paschal's Dig., art. 2266.) Neither that the killing was with "express malice." (Paschal's Dig., art. 2267.) "Express malice" not presumed must be proven. (36 Tex., 528.) To be proved it must be alleged. "Malice aforethought," the charge in the indictment, may be either express or implied. To be murder of the first degree, it must be express. (Paschal's Dig., art. 2267; 25 Tex., 33.)

The court therefore gave to the indictment the harshest construction, rather than the most favorable to the defendant. Even if "express malice" is a negative allegation, it should be used. (25 Tex. Supp., 340; 1 Greenl. Ev., pp. 78, 81, and notes.)

*George Clark, Attorney General,* for the State.

GOULD, ASSOCIATE JUSTICE.—The indictment follows the usual form, the sufficiency of which under our statute cannot now be questioned. It has not been held necessary to aver that the person killed was a reasonable creature, nor to charge that the killing was with express malice, the words "with malice aforethought" being sufficient. (Henrie *v.* State, 41 Tex., 573; Gehrke *v.* State, 13 Tex., 573; McCoy *v.* State, 25 Tex., 37; Calvin *v.* State, 25 Tex., 793; Perryman *v.* State, 36 Tex., 321.)

The verdict is not vitiated because, after finding the defendant guilty of murder in the first degree, the jury unnecessarily proceed to fix the punishment at death. Whilst they might have substituted imprisonment at hard labor for life, instead of death—and in that event it would have been necessary that their verdict should be so framed—and whilst, where a verdict finds the defendant guilty of murder in the first degree, and is silent as to the punishment, the law steps in and affixes the punishment of death, it is not perceived that the unnecessary assessment of the punishment renders the verdict in anywise defective.

The court below treated the indictment as charging defendant with the murder of Isaac Thomas, and the evidence shows that the party killed was a freedman of that name. It is contended, apparently for the first time in this court, that the indictment charges the murder of Isaac Thomas Freedman. In the indictment, as copied in the record, the name, wherever it occurs, is thus written. So the name of the defendant, in the indictment, as sent up in the record,

is written Arch. Perry Freedman. Yet, without objection on his part, the trial proceeded against him as Arch. Perry. The original indictment has not been sent up, and we cannot say that the court erred in treating the word "freedman" in each case as descriptive of the party, and not as a part of the name.

The evidence, as sent up, is extremely meager. The killing occurred about 9 or 10 o'clock, on a moonlight night in August or September, 1867, in Matagorda county, at the Rugely plantation, which was occupied by a large number of freedmen, and where defendant and deceased both lived.

Green, the only witness of the occurrence who testifies, says that the defendant came up to where he and Isaac Thomas were sitting on a bench, near Sam. Rugely's house, which adjoined that of defendant. Besides these parties, Andrew Phillips and a brother of Green were present. After having seated himself on the bench, and after talking some time, defendant said to deceased, "I have heard that you said that my wife and myself had been talking about you last night." That the deceased replied, "Yes; but that I paid so little attention to it, and thought so little about it, that I care nothing about it, and do not wish to have any fuss about it;" that then the defendant cursed the deceased for some time, calling him "a damn liar, and a damn son of a bitch;" that the defendant had taken the butcher-knife from witness' belt previously, and when the deceased replied "that he would not take such abuse from any man," the parties got up and approached one another, and pushed one another; he could not see who pushed first, but that defendant stabbed deceased in the breast with his right hand at the time he pushed with his left; that deceased lived about fifteen minutes, and as soon as he was stabbed turned to a brother of witness and said, "Arch. has stabbed me," and asked for his pistol; that he wanted to shoot defendant; that the freedmen were generally in the habit of carrying arms; that he helped [to] dress the body, but does

not remember if there were any arms upon it or not. Witness was twenty-seven years old, and Arch. was younger than witness; knew him younger by two or three years. The deceased was a man of full age. This witness also testified that defendant used his wife's name once in addition to the time already alluded to; that defendant's wife was in his house, but did not know whether she was present before or after the killing.

Dr. Henry Rugely fixes the approximate date of the killing, and testifies as to the wound, "that a person cut as was the deceased could not survive more than three or four minutes; also, that the deceased was a large and powerful man—larger than the defendant."

Frank Rugely testified "that the deceased, whom he knew well, was a large, powerful, and dangerous man, but not quarrelsome."

This is the entire testimony.

The charge of the court instructed the jury as to the punishment of murder in the first and second degrees; defining murder in the first degree as murder with express malice, and murder in the second degree as murder with implied malice. After explaining express malice, the charge proceeds: "The law implies malice in case of unlawful killing by means calculated to produce death, and in such case the burden of proof is on the defendant, if he would reduce the offense to a less grade than murder in the second degree." Manslaughter is then defined and explained, and its punishment stated; and after explaining what constitutes adequate cause, the charge concludes as follows: "If a personal conflict be brought on by a defendant for the purpose of killing another, and [he] does kill him, he cannot contend that such conflict renders his mind incapable of cool reflection, and thereby reduce the killing from the grade of murder to manslaughter. A defendant in a criminal case is presumed to be innocent until his guilt be established by legal evidence, and in case of a reasonable doubt as to his

guilt under the law and the evidence, he is entitled to an acquittal. If you believe that the defendant is guilty of the homicide, but have a reasonable doubt as to his guilt as to murder in the first degree, you will find him guilty of murder in the second degree, and if you have a reasonable doubt as to his guilt as to murder in the second degree, you will find him guilty of manslaughter."

The defendant asked a charge on the law of self-defense, which, as copied in the record, is scarcely intelligible, which was refused. Under the evidence we do not think the court erred in refusing to charge on that subject.

That part of the charge which speaks of the burden of proof being on defendant is not strictly correct. In the case of Hall *v*. The State, Galveston Term, 1875, this subject was fully considered, and after a careful examination of the statutory provisions bearing upon it and a review of the leading authorities, the conclusion is arrived at that the burden of proof is not on the defendant in a criminal case in the sense in which it is understood to rest on the defendant in a civil suit. "In a criminal prosecution, where the accused relies on the plea of not guilty, admitting nothing, the onus is on the State to overcome the legal presumption of his innocence, and the question of his guilt is to be decided from the whole evidence, without pausing to inquire whether it was introduced by him or the State." Although the evidence should show an unlawful killing by means calculated to produce death, if the attendant circumstances leave it doubtful whether the killing was not manslaughter, then the rule as to the burden of proof does not apply, and the defendant cannot legally be convicted of murder. Indeed the court so instructed the jury, and it is not clear that the error in the first part of the charge was not thus sufficiently corrected. Under the evidence, however, a charge as to the burden of proof was not appropriate, and was calculated, as given, to mislead, and although afterwards corrected by a proper charge, it may still have misled the jury.

So that part of the charge which says, "If a personal conflict be brought on by a defendant for the purpose of killing another, he cannot contend that such conflict renders his mind incapable of cool reflection," &c., is not unobjectionable. As the charge nowhere tells the jury the law, if the conflict was brought on by defendant, but not for the purpose of killing, the jury may have inferred that in the opinion of the judge the conflict was provoked for the purpose of killing, or may have inferred that if defendant was in fault in bringing on the difficulty it was unnecessary to inquire as to his purpose or the condition of his mind when the act was either designed or consummated. If the evidence left the purpose of defendant doubtful, if there was room for a jury to infer that though the defendant provoked the conflict, it was with no intention of doing serious bodily harm to deceased; that the act of killing was the result of sudden passion and immediate design, and not of a sedate mind; that defendant did not prepare himself beforehand, but on the spur of the moment, and whilst incapable of cool reflection or of " such sedate and deliberate action as is compatible with express malice " seized and used a weapon which happened to be at hand, then it was proper for the court to have given a charge looking to the contingency that the jury might so view the facts, and telling them that this would be murder in the second degree. (Farrer v. The State, 42 Tex., 265.)

We think the great question of the case was as to the degree of defendant's guilt. It was to him all important that the jury should understand that if the act was designed and done whilst his mind was not sedate, but excited and incapable of cool reflection; that although there may have been no adequate cause for this state of mind, and therefore the offense could not be manslaughter, still it would not be murder in the first degree. Looking at the charge as a whole, we think it objectionable in not sufficiently calling

the attention of the jury to murder in the second degree. (Farrer *v.* The State, 42 Tex., 265.)

For these reasons, and influenced to some extent by the indefinite and unsatisfactory history which the record gives us of the occurrence and its attendant and antecedent circumstances, we think that the defendant is entitled to a reversal of the case. It is also worthy of consideration that if the witness Green is correct in his statement of defendant's age, it is left doubtful whether at the time of the offense he was not under seventeen years of age. His own age at the trial in June, 1875, he states to be twenty-seven years, and in August, 1867, his age must have been nineteen, or at most barely twenty ; and if, as he says, the defendant was two or three years younger, this would make it doubtful whether he had arrived at the age of seventeen years or not. If he had not arrived at that age at the time of the offense he could not be punished with death. (Paschal's Dig., art. 1639.) Whilst it appears that defendant was at the time married, and no such question has been suggested by counsel, it is another feature of the case calling for fuller investigation in another trial.

REVERSED AND REMANDED.