## T. R. JENNINGS *v.* THE STATE.

1. MURDER. — Between the elements and definition of murder at common law and of murder under the Penal Code of this State there is no material difference, and therefore common-law indictments for that offence have always been held by our courts to be sufficient in substance.

2. MANSLAUGHTER under the Code of this State differs materially in its elements, definition, and penalty from that offence at common law, by which, although a felony, its punishment, under the operation of the benefit of clergy, was practically reduced to that of a misdemeanor. At common law it was defined as the unlawful and felonious killing of another, without malice express or implied; whereas our Code defines it as "voluntary homicide, committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law." One consequence of these differences is that a common-law indictment for manslaughter is not sufficient to charge that offence in this State. See the opinion in elucidation and the indictment in illustration of this subject.

3. PLEADING. — The Code of this State requires that an indictment shall set forth the offence "in plain and intelligible words;" and this requirement is not satisfied by an indictment, such as a common-law indictment for manslaughter, from which no offence against the law of this State can be deduced except by a process of inference and elimination.

APPEAL from the District Court of Nacogdoches.   Tried below before the Hon. R. S. WALKER.

The charging part of the indictment was as follows: "That Thomas R. Jennings, on the 24th day of November, A. D. 1875, with force and arms, in the county of Nacogdoches aforesaid, with a certain pistol, which the said Thomas R. Jennings in his hands then and there had and held, which said pistol was then and there loaded with gunpowder and leaden balls, in and upon Hulen H. Crain, in the peace of God and the said State then and there being, unlawfully, wilfully, and feloniously an assault did make, and that the said Thomas R. Jennings did then and there unlawfully, wilfully, and feloniously shoot off and discharge out of and from the pistol aforesaid the leaden balls aforesaid, by force of the gunpowder aforesaid, to, at, against, upon, and into the body of him, the said Hulen H. Crain, and that the said Thomas R. Jennings did then and there, with the leaden balls aforesaid, so by him shot off and discharged out of and from the pistol aforesaid, unlawfully, wilfully, and feloniously strike, penetrate, and wound him, the said Hulen H. Crain, then and there and thereby inflicting upon the right side of him, the said Hulen H. Crain, about six inches below the right armpit of him, the said Hulen H. Crain, one mortal wound of the depth of six inches and of the width of one inch, and of which said mortal wound the said Hulen H. Crain, on the 27th day of November, A. D. 1875, in the county of Nacogdoches aforesaid, did die.   And so the jurors aforesaid, upon their oath aforesaid, do say and present to the said court that the said Thomas R. Jennings, in manner and form as aforesaid, did then and there unlawfully, wilfully, and feloniously kill and slay him, the

said Hulen H. Crain; against the peace and dignity of the State."

The defence moved to quash the indictment: " 1. Because said indictment does not charge manslaughter as defined in the Criminal Code; said indictment does not charge that the alleged homicide was voluntary, and committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law.   2. Because said indictment does not charge any malice.   3. Because it is vague, uncertain, and indefinite, neither charging murder nor manslaughter.   4. Because it does not charge any offence known to the law."   The motion to quash was overruled.

The case having proceeded to trial, the jury found the appellant guilty of manslaughter, and assessed his punishment at three years' confinement in the penitentiary.   He moved for a new trial on various grounds, and also in arrest of judgment, assigning " that it does not appear from the face of the indictment filed in this cause that any offence against the law has been committed by the defendant; that it does not appear from the face of the indictment that any such offence as the one for which defendant has been convicted was committed by the defendant."   These motions being overruled, he prosecutes his appeal.

The testimony was voluminous, and there is no occasion to narrate it.   Both the deceased and the defendant, it appears by some of the witnesses, were drunk, and engaged in a sudden and violent quarrel, culminating in menacing gestures and a blow struck the defendant by the deceased, and the immediate shooting of the deceased by the defendant.   Deceased habitually carried arms, and, when drinking, was deemed a dangerous man, and appellant had cause to believe him armed at the time.

*Wellborn, Leake & Henry, J. H. Jones* and *G. F. Ingraham,* for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

CLARK, J.   Murder at common law is defined as follows :
"When a person of sound memory and discretion unlaw-
fully killeth any reasonable creature in being, and under the
king's peace, with malice aforethought, either express or
implied." 3 Inst. 47 ; 47 Bla. Comm. 195 ; 1 Hale's P. C.
425. Our legislative definition of that offence has gen-
erally conformed substantially to the definition above given,
and for many years has been almost its literal counterpart.
The act of December 21, 1836, contained the following
definition : " Every person of sound memory and discretion,
who shall wilfully and maliciously kill any person within
this Republic, or shall aid, abet, or instigate the killing of
any person aforesaid, shall be deemed guilty of murder,
and on conviction thereof shall suffer death." Hart. Dig.,
art. 2509.

Our present statute, adopted in 1858, is in similar terms,
but perhaps more nearly approximating the language em-
ployed at common law : " Every person with a sound mem-
ory and discretion, who shall unlawfully kill any reasonable
creature in being, within this State, with malice afore-
thought, either express or implied, shall be deemed guilty
of murder." Rev. Penal Code, art. 605. From these
provisions it appears beyond question that our legislation,
during our whole existence as a Republic and a State, has
never attempted to change the essential elements of mur-
der as it existed at common law, but has continued the
common-law offence, through all the mutations of govern-
ment and legislation, substantially as it existed in the days
in which Coke and Blackstone wrote, and long anterior
thereto.

The sufficiency of an indictment in the common-law form,
under our practice, was brought to the attention of our
Supreme Court at an early day, in the leading case of
*Gehrke* v. *The State*, 13 Texas, 568, and it was insisted that

the statutory separation of the offence into two degrees, and prescribing "that all murder committed by poison, starving, or torture, or other premeditated or deliberate killing, * * * is murder in the first degree," required the pleader, in framing an indictment for murder in that degree, to employ certain statutory words in addition to those employed at common law in charging the offence. But the court held, under well-established authorities, that our statutes did not change the common-law definition of the offence, and that therefore an indictment in the common-law form contained every substantial requisite. This decision has been followed uniformly ever since. *White* v. *The State*, 16 Texas, 206; *Wall* v. *The State*, 18 Texas, 682; *Perry* v. *The State*, 44 Texas, 473.

An examination of the definition of manslaughter at common law and under our statute does not reveal that similarity which pertains to the offence of murder under the two systems. At common law, manslaughter is defined as "the unlawful and felonious killing of another, without any malice, either express or implied." 4 Bla. Comm. 191; Whart. on Hom., sect. 4. It consisted of two different kinds or degrees, to wit: *first*, voluntary manslaughter, which is somewhat similar to manslaughter under our law; and, *second*, involuntary manslaughter, which corresponds to our offence of negligent homicide. The crime was a felony, but with benefit of clergy, and the indictments for the two degrees were essentially different. 4 Bla. Comm. 193; 1 Whart. Prec. of Indict., sects. 167, 170.

In the adoption of our Penal Code, the Legislature carved out of the common-law offence two distinct crimes, and gave to manslaughter, not the common-law definition, but a definition hitherto unknown to the law, which fixed the *status* and elements of the offence with a distinctness that forbids confounding it with the offence at common law. It was declared to be "voluntary homicide, committed under the immediate influence of sudden passion arising from an

adequate cause, but neither justified nor excused by law" (Penal Code, art. 593), and not the killing of another without premeditated malice, as declared by a former statute. Hart. Dig., art. 2405. Not only did it affix to the offence an entirely new definition, but it gave to it distinct ingredients, and increased the punishment over what it was at common law, by making it a felony with a maximum and minimum penalty, benefit of clergy never having been known to our law. Though a felony at common law, benefit of clergy practically reduced its punishment to the grade of a misdemeanor with us.

These general views are important to be borne in mind in arriving at a proper solution of the most material question presented for our decision in this case, and that is the sufficiency of the indictment upon which the appellant was convicted. This indictment is in the common-law form for manslaughter, and charges, with the usual accompanying allegations, that appellant did unlawfully, wilfully, and feloniously kill the deceased, but does not charge that it was done with malice.

In an able review of the *Gehrke Case*, Judge Wheeler took occasion to reëxamine the question of the sufficiency of a common-law indictment for murder in our State, and, after an elaborate review of the authorities of other States, reached the same conclusion before arrived at and announced by the court. After quoting from *The People* v. *Enoch*, 13 Wend. 159, wherein the judgment of the Supreme Court of that State was affirmed, and in which the general principle applicable to all indictments founded upon statutes, that it was necessary to set forth all the facts and circumstances which constituted the offence as defined in the statute, was conceded, he proceeds to say: " The same principle applies where an offence at common law has been raised by statute by increasing the punishment, as where the benefit of clergy has been taken away, or a misdemeanor has been raised to a felony. But the application of this

principle to the case is not admitted, for the statute has not altered the common law. The offence of murder, as defined in the statute, was such before the statute. There is no new offence created by the statute, nor a new punishment annexed to an old offence. The case, therefore, does not fall within the rule, nor the reason of the rule, supposed to be violated by the form of the indictment." *Wall* v. *The State*, 18 Texas, 695.

And in the case of *The People* v. *Enoch* the principle is stated as follows: "In determining the question whether an indictment should be drawn as at the common law, or should appear to be founded upon a *statutory* provision which is applicable to the offence, the following rules are to be observed: If the statute creates an offence, or declares a common-law offence, when committed under particular circumstances not necessarily included in the original offence, punishable in a different manner from what it would have been without such circumstances; or where the statute changes the nature of the common-law offence to one of a higher degree, as where what was originally a misdemeanor is made a felony, the indictment should be drawn in reference to the provisions of the statute creating or changing the nature of the offence." 13 Wend. 173.

See also *The State* v. *Gove*, 34 N. H. 510. Mr. Bishop, in his valuable work on Statutory Crimes, says, "that if a statute in general terms provides a punishment for 'murder' or for 'manslaughter,' it means murder or manslaughter as the offence is defined at the common law. Then, in the absence of any statutory provision, the indictment should be drawn precisely as at the common law. If it is in a State in which there are no common-law offences, or if the offence is against the United States, it should also conclude against the form of the statute." Bishop's Stat. Cr., sect. 469. And the same author, in treating of indictments for statutory homicide, says: "It is a leading proposition, in these as in all other cases of indictments upon statutes,

that the pleading must follow, in substance, the statutory language." 2 Bishop's Cr. Proc., sect. 614. The only State in which a different rule seems to obtain is Ohio, so far as our researches have extended; but although the common law, as to offences, does not prevail in that State, its statute defines manslaughter similarly to its definition at common law, and, as said by their Supreme Court, the Legislature adopted the common-law definition in substance, and almost in form. *Sutcliffe* v. *The State*, 18 Ohio, 469.

It is thus seen that the rule upon which our decisions as to the sufficiency of indictments in the common-law form for murder are founded cannot apply to indictments for manslaughter. In the case of murder, the statute does not vary from the common-law definition; and in such case the authorities, so far as we have been able to discover, are uniform to the effect that the common-law indictment fills the full measure of the statute in charging the offence. But in manslaughter, the departure from the common law is most material in more than one essential particular. Not only is the penalty different, but the offence itself is carved out of the common-law offence, leaving a residuum which is provided for by our laws in a separate and different statute and designated by a different name. An indictment which charges the defendant with having unlawfully, wilfully, and feloniously killed another, cannot convey unmistakably to his mind the important and essential information that the State proposes to arraign and try him for having voluntarily slain a fellow-being under the immediate influence of sudden passion, arising from an adequate cause but neither justified nor excused by law. He may infer, because he is not charged to have done the act " with malice aforethought," that his prosecution is not for murder; and casting about in an effort to locate the exact crime, he may further infer, from the fact that he is charged with felonious killing, that the offence cannot be negligent homicide in either degree. And by the same mental process he may be

enabled to discard the degrees of justifiable and excusable homicide, and find that the only grade of homicide remaining is manslaughter, and therefore that must be the offence with which the pleader designed to charge him. Such an indictment does not fill the measure of our law, which requires an offence to be stated in plain and intelligible words ; and we would be doing violence to the letter and spirit of our Codes, as well as disregarding the reason of the law, founded upon authority, should we hold any indictment of this character sufficient to justify the arraignment and conviction of the citizen.

The exceptions of defendant to the indictment, as well as his motion in arrest of judgment, should have been sustained. And the indictment being invalid, there is no occasion to discuss the question of former jeopardy raised upon the trial.

The charge of the court is not free from objection, and in case of another trial should be qualified. The charge submits to the jury the principles of law applicable to self-defence upon a reasonable apprehension and appearance of danger, but so qualifies it with repeated preceding instructions as to the necessity of absolute danger before a person is justified in exercising the right of self-defence, that we cannot say the jury were authorized or likely to give the proper weight to that part of the charge, in view of the qualification.

The charge also dwelt at length upon the law as applicable to a combat voluntarily and mutually engaged in between parties, with deadly weapons, — an issue that it might have been proper to refer to, but not sufficiently patent from the evidence to justify the prominence given to it. Its frequent repetition and elaboration throughout the charge was calculated to cause the jury to forget or ignore the true issue ; and that was, whether or not, at the crisis of the difficulty, which arose upon a sudden quarrel, the defendant, from the character and habits of the deceased and

his acts at the time, had a reasonable expectation or fear of immediate death or serious bodily injury at the hands of the deceased, and were those facts and circumstances sufficient to justify such apprehension; or was the fatal shot prompted by sudden anger, rage, or resentment, arising from an adequate cause, but neither justified nor excused by the law. The defendant was entitled to have this issue plainly presented to the consideration of the jury, in such form that their minds could readily grasp the issue and solve it without being compelled to extract and sift it from the very able and elaborate charge given them, — a task for which the mind of the average juror is never competent.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*