| 12 | 257 |
| 29 | 620 |

## SIMON LUERA *v.* THE STATE.

1. PRESUMPTION OF INTENT—BURDEN OF PROOF.— Note in a trial for murder a state of case which made it error to give in charge to the jury articles 50 and 51 of the Penal Code, to the effect that criminal intent may be inferred from the means used, and that, when the State has proved a *prima facie* case, the burden is on the defense to show justification or excuse.
2. SELF-DEFENSE.— The right to prevent the consequences of theft by seizing the stolen property and the thief, as defined in article 343 of the Code of Procedure, does not confer upon the owner of the property a right to pursue and take the thief dead or alive, nor is the thief thereby deprived of all right of resistance if attacked under such circumstances.
3. SAME — MANSLAUGHTER.— See a state of proof in a trial for murder which demanded that the law of self-defense and also the law of manslaughter should have been given in charge to the jury.

APPEAL from the District Court of Duval. Tried below before JOHN S. McCAMPBELL, Esq., Special Judge.

A clear though succinct summary of the evidence will be found in the opinion of the court.

*Waul & Walker*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

Willson, J.   The defendant was convicted of murder in the second degree, committed upon Ascension Rodrigues, and the jury assessed his punishment at confinement in the penitentiary for a term of forty years.

The facts of the case, as shown by the statement of facts, are in substance as follows: The defendant had been in a difficulty with a shepherd, on the ranche of one Perez in McMullen county, and had shot and wounded the shepherd.  In fleeing from the ranche, after the shooting, he took a horse belonging to Perez, the owner of the ranche, but which horse was taken from the possession of Ascension Rodrigues, the deceased, who was the *major-domo*, or overseer in charge of the ranche.  The defendant had, a short time previously, been an employee on this same ranche, but was not such employee at the time of taking the horse.  When defendant left with the horse, the deceased, accompanied by his brother Martin Rodrigues, pursued him to recover the horse.  They followed him about nineteen leagues in the direction of the town of San Diego, and stopped by a field on the roadside to rest.  This was two and one-half or three miles from San Diego.  The pursuers had in some way gotten ahead of the pursued, and while they were resting he came riding up from the direction they had come.  Deceased and his brother both hailed defendant; called to him twice and told him to stop.  As soon as he saw deceased and brother he started to run, and they started after him, all being mounted on horseback.  The deceased started ahead of his brother in the pursuit, and kept ahead of him, and kept close up to defendant.  When the defendant had been pursued down the road some 20 or 25 paces (a pace being about five feet), he fired a shot with a

pistol at deceased.   The defendant fired the first two shots, and fired them at the deceased during the pursuit, and the deceased then commenced firing with a pistol at the defendant, and fired three shots, and the defendant then fired a third shot at the deceased, which entered his heart and he fell from his horse and instantly died.   The defendant continued his flight after the deceased fell, and did not shoot or attempt to shoot again.   This all occurred on the public road leading to San Diego, and occurred about 12 or 1 o'clock in the night.   The night was a bright moonlight night.   When the defendant was hailed by deceased and brother he made no reply, but as soon as he discovered who they were he fled.   The killing occurred in Duval county.   The foregoing is the State's case, as made by the testimony of Martin Rodrigues, the brother of deceased, and who was the only witness to the killing.

It was proved on the part of defendant that when he was arrested in San Diego for the killing, on the same night that the killing occurred, it was found that he had been struck and slightly wounded by a pistol ball.   The ball had passed through the rear portion of his saddle, had struck his thigh, and dropped down into his boot. The shot had evidently been fired from behind defendant.

Upon this state of facts the judge in his charge, after instructing the jury in the definition of murder, and in the distinction between murder in the first and murder in the second degree, etc., gave this instruction: "The intention to commit an offense is presumed whenever the means used is such as would necessarily result in the commission of the forbidden act; and on the trial of any criminal action, when the facts have been proven which constitute the offense, it then devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act."   While this is in almost the exact language of the Code (P. C. arts. 50, 51), still we think it was error to give such charge upon

the facts in this case. *Guffee* v. *State*, 8 Texas Ct. App. 187; *Delaney* v. *State*, 41 Texas, 601; *Brown* v. *State*, 4 Texas Ct. App. 275; *Ake* v. *State*, 6 Texas Ct. App. 398; *Leonard* v. *State*, 7 Texas Ct. App. 567; *Ainsworth* v. *State*, 8 Texas Ct.. App. 532.

"In a criminal prosecution where the accused relies on the plea of not guilty, admitting nothing, the onus is on the State to overcome the legal presumption of his innocence, and the question of his guilt is to be decided from the whole evidence, without pausing to inquire whether it was introduced by him or the State." *(Perry* v. *State*, 44 Texas, 473.) In the case cited, the following charge was held to be erroneous: "The law implies malice in case of unlawful killing by means calculated to produce death, and in such case the burden of proof is on the defendant if he would reduce the offense to a less grade than murder in the second degree."

The court also gave the jury this further instruction: "You are further charged that all persons have a right to prevent the consequences of theft, by seizing any personal property which has been stolen, and bringing it with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable grounds to suppose the property to be stolen, and the seizure must be openly made." This charge is in the language of the law. (Code Crim. Proc. art. 343.) But it was given to the jury without explanation or qualification, and, standing alone as it does, was calculated to mislead the jury, and cause them to believe that the deceased and his brother, upon the mere belief on their part that the defendant had stolen a horse, had the legal right, without warrant, to pursue and take him dead or alive, and that he had no right to resist any attack they might make upon him. Such is not the law, and the facts of this case did not call for, or justify

the charge as given. *(Lacy* v. *State,* 7 Texas Ct. App. 403.)

The court gave no instructions as to manslaughter. We think the facts of the case demanded such instructions. The killing was sudden, and perhaps under the immediate influence of sudden passion, arising from an adequate cause. (Penal Code, art. 593; *Lindsay* v. *State,* 36 Texas, 337; *Sanders* v. *State,* 41 Texas, 306; *Gatlin* v. *State,* 5 Texas Ct. App. 531.

Neither did the court give any charge as to the law of self-defense. Defendant's counsel requested a special charge presenting this defense, but the court refused to give it. We cannot conceive why it was, under the facts in this case, the court declined to charge upon self-defense, unless it was that the court thought that, as the defendant was being pursued as a horse-thief, he had forfeited all right to his life, and would not under any circumstances be justified in protecting himself from any attack that his pursuers might make upon him. We think the court erred in not instructing the jury fully upon the law of self-defense. *(Sutton* v. *State,* 2 Texas Ct. App. 342; *Wasson* v. *State,* 3 Texas Ct. App. 474; *Marshall* v. *State,* 40 Texas, 200.)

Because of the errors named, the judgment of conviction is reversed and the cause remanded.

*Reversed and remanded.*