## CALVIN, A SLAVE, V. THE STATE.

Since the adoption of the Penal Code, the word " feloniously " is not indispensable to the validity of an indictment, even for a capital felony.

The whole spirit of the codes authorizes the courts to dispense with what the books call " terms of art " in the description of offences in indictments, and also in every part of the indictment.

No alteration can be made in a material respect in an indictment by the counsel, or the district attorney and the defendant, or even by the court.

An indictment thus altered will not support a conviction, notwithstanding it contained two counts, and that no alteration was made in the second count.

The amendments which are allowed relate to matters of form only, and to the name of the party who is accused.

The motion to set aside the verdict and proceedings under the facts in this case, should be considered as a motion in arrest of judgment, and ought to have been sustained.

Where a motion to set aside the verdict of guilty in a case of felony, and to annul the proceedings on the indictment, before sentencing the prisoner, was overruled in the District Court, and judgment pronounced, this court reversing the judgment and sustaining the motion, on account of a fatally defective indictment, will command the District Court to hold the defendant committed until the grand jury shall have an opportunity to present a new indictment.

APPEAL from Rusk. Tried below before the Hon. C. A. Frazer.

Indictment against Calvin, a slave, charging him with the murder of a woman named Vina, a slave. Indictment filed November

4th, 1858; the offence was alleged to have been committed on the fourth day of May, 1858. At the Fall Term of the District Court a trial was had, and the defendant was found guilty by the verdict of the jury, "in manner and form as charged in the indictment."

The defendant filed at said term, after the return by the jury into court, of their verdict, motions for a new trial and in arrest of judgment, both of which were overruled; from which judgment upon said motion in arrest the defendant gave notice of appeal to the Supreme Court. Thereupon, "it being demanded of the prisoner if he had any thing to say why the sentence of death should not be pronounced against him? in addition to his former plea of 'not guilty' herein previously entered, says that he prays an appeal to the Supreme Court to have the proceedings herein revised." The District Court, instead of rendering a final judgment and sentence upon the verdict, ordered the defendant to be recommitted to the jail of the county, to await the decision of the Supreme Court. The appeal was dismissed by this court on the 20th day of May, 1859, and on the 23d day of the same month and year, the district attorney filed a motion in the District Court, based upon the mandate of the Supreme Court, dismissing the appeal because no final judgment had been rendered in the case, to enter judgment nunc pro tunc upon the verdict. William Stedman and James H. Jones withdrawing as counsel of the defendant, the court, on the 23d day of May aforesaid appointed Richard S. Walker and John M. Dodson, esquires, to represent him. The opinion shows sufficiently all the other facts; and it is not deemed important in view of the grounds of the decision, to state more fully the various points presented by counsel in the shape of exceptions, protests, motions for new trial, in arrest of judgment, &c. The defendant, by the sentence of the court, was condemned to be hung on the eighth day of July, 1859. He appealed from this final judgment, and assigned as error the judgments of the court overruling the motions for a new trial and in arrest of judgment filed at the Fall Term 1858 and at the Spring Term 1859; and that sustaining the motion of the district attorney filed at the Spring Term, 1859, to render judgment upon the verdict, and that also overruling

defendant's exceptions and objections filed to said motion. None of the other assignments of error need be here noticed.

*T. W. Jones*, for the appellant.

*Attorney-General*, for the State.

BELL, J.—This case was before us at the last term of this court, and was dismissed because no final judgment had been rendered in the court below. When the mandate of this court was sent down to the District Court, a motion was made in behalf of the State, that a final judgment should be rendered upon the verdict of the jury. A final judgment was accordingly rendered by the District Court, upon the hearing of the motion, and the case is now again brought before us by appeal. It becomes proper that I should state, with some particularity, the history of the case. The indictment contains two counts. As originally presented by the grand jury, the first count in the indictment charged that the appellant murdered "a negro woman, a slave, named Vina, the property of the heirs of the said Robert Smith, deceased." The second count alleged that the appellant murdered "a certain negro woman Vina, a slave, the property or slave of one Robert Winn." The first count in the indictment charged that the murder was committed by striking on the head, with a billet of wood. The second count alleged that the murder was committed in a different manner.

Upon the presentment of the indictment by the grand jury, two attorneys of the court were appointed by the presiding judge, to conduct the prisoner's defence. The gentlemen appointed by the court to defend the prisoner were William Stedman, Esq., and J. H. Jones, Esq. I mention their names for convenience in stating the facts, and because their reputation is too well established to make it a matter of any delicacy to name them. Before the trial of the cause, these gentlemen entered into the following written agreement with the district attorney: "In this cause, by agreement the district attorney amends the indictment by striking out, after the name Vina, in the twenty-second line from the top of

the page, the following words, 'the property of the heirs of the said Robert Smith, deceased.'" (Signed) " J. M. CLOUGH, District Attorney, 6th Dist."

"We agree to the foregoing amendment, and that the same may be filed in this cause." " W. STEDMAN, (Signed) " J. H. JONES, . " Counsel for defence."

This paper was accordingly filed in the cause, and the words "the property of the heirs of the said Robert Smith, deceased," were erased from the first count in the indictment.

The case proceeded to trial, and the prisoner was found guilty of murder as charged in the indictment. The counsel for the prisoner moved for a new trial, which motion was overruled by the court. They then moved to arrest the judgment, on the ground that the indictment was insufficient in law, and for other reasons. The motion in arrest of judgment was overruled, and the prisoner excepted and gave notice of appeal. The case then came to this court, and, as has been before said, the appeal was dismissed for want of final judgment. When the motion was made, at the next term, in the District Court, to render judgment *nunc pro tunc*, that court appointed J. M. Dodson and R. S. Walker, Esquires, to represent the prisoner, and show cause, if they could, why final judgment should not be rendered. Those gentlemen presented a great variety of objections to the rendition of the judgment, only one of which need be noticed. In what was called a motion for a new trial, but which was equivalent to a motion in arrest of judgment, it was shown to the court that "the indictment has been substantially altered by erasures of material matters without the prisoner's consent, and not by way of amendment, to wit: in the erasure of the words 'the property of the heirs of the said Robert Smith, deceased,' and because the prisoner's counsel had no authority to alter or consent to any amendment of the indictment by agreement; for which cause the prisoner moves to set aside the verdict in said case, and all proceedings had on said mutilated indictment. Defendant denies the right of counsel to agree for him to any amendment; and if such agreement be legal and binding on him, he denies the right of the district attorney, or

Calvin v. The State.

any other person, to erase from the indictment the words proposed to be amended." The court overruled all the exceptions, protests, objections and motions made by the counsel for the prisoner, and rendered final judgment on the verdict of the jury. This statement of the case will make it intelligible, and will render it easy to understand·the view we take of it. The original motion in arrest of judgment questions the sufficiency of the indictment.

It is objected that the indictment does not charge that the killing was done "feloniously," and it is urged that the use of the word "feloniously," cannot be dispensed with in an indictment for murder. The indictment in this case charges that the killing was done "unlawfully, voluntarily, with deliberate design, and with his malice aforethought." At Common Law, it was undoubtedly necessary to use the word "feloniously," in an indictment for murder. Its use could not be dispensed with, no matter what other words were used in alleging the *animus* with which the homicide was committed. But we are of opinion that since the adoption of our Penal Code, the word "feloniously" is not indispensable to the validity of an indictment, even for a capital felony. One object which the legislature sought to attain in the adoption of the code was to dispense with mere formalities, useless verbiage, and perplexing circumlocutions in the definition of offences, and in all the proceedings of the court in the administration of the criminal law. The Penal Code, Art. 607, provides that "every person with a sound memory and discretion, who shall unlawfully kill any reasonable creature in being within this State, with malice aforethought, either express or implied, shall be deemed guilty of murder."

In treating of the requisites of an indictment, Art· 395 of the Code of Criminal Procedure, in the seventh sub-division, provides that the offence must be set forth in "plain and intelligible words." We think that the whole spirit of the codes authorizes the courts to dispense with what the books call "terms of art" in the description of offences in indictments, and also in every part of the indictment; and that even so distinguished a word as "feloniously" is no longer to be considered as a *sine qua non* in the administration of justice in this State.

But we are of opinion that the alteration of the indictment in this case was contrary to law, and that the indictment as altered could not support a conviction.- The words which were erased from the indictment were words of substance.  It is true, there was a second count in the indictment which might have been good to support a conviction, although the words which were erased had never been contained in the first count, and it may be that the first count would have been good in itself if it had never contained the words which were erased.  But those words having been placed in the first count became words of substance by being put there.  No conviction could have been had on the first count with those words in it, without proof of the fact asserted by those words.  The question is not, therefore, concerning the sufficiency of the indictment, without the erased words, to support the conviction ; nor is it a question of good and bad counts in an indictment.  The question is whether or not the counsel, or the district attorney, and the prisoner, or even the court can make an alteration in an indictment in a material respect.  We think not.  The indictment is the sworn declaration of the grand jury; and what they in substance "do say," must stand as they have said it.  The law prescribes the extent to which their finding may be amended.  The amendments which are allowed relate to matters of form only, and to the name of the party who is accused.  There can be no amendment as to any declaration of a fact by the grand jury.  If there can be no amendment of matter of substance by the court, a fortiori there can be no alteration of the indictment as to matter of substance by agreement between the district attorney and the counsel for the prisoner.  The Code of Criminal Procedure makes no provision for cases in which indictments have been altered or mutilated or defaced, either intentionally or accidentally, and we have had some difficulty about the proper practice in cases of this kind.  We do not believe that every accidental or intentional mutilation or partial obliteration of an indictment would have the effect to destroy its vitality, because this would be to place the power of the courts to punish offences too much at the mercy of reckless and unscrupulous men.  On the other hand, when a party is put to trial upon an indictment

which has been improperly amended by the court in a material respect, or which has been altered by agreement of counsel in a material respect, such amended or altered indictment will not support a conviction ; and if there be verdict and judgment upon such an indictment, the judgment should be arrested.

The Code of Criminal Procedure provides that the court may, for good cause shown, hear a motion in arrest of judgment at any time. (Art. 677.) The Code of Criminal Procedure also provides that " whenever it is found that this Code fails to provide a rule of procedure in any particular state of case which may arise, and is therefore defective, the rules of the Common Law shall be applied and govern." (Art. 27.)

We think it proper, therefore, that the motion to set aside the verdict and proceedings in this case, which was submitted to the District Court on the 23d day of May, 1859, by Messrs. Dodson and Walker, in behalf of the prisoner, ought to be considered as a motion in arrest of judgment, or as having the like effect, and that the same ought to have been entertained. Art. 751 of the Code of Criminal Procedure provides that " where the defendant's motion in arrest of judgment was overruled, and it is decided on appeal that the same ought to have been sustained, the cause shall stand as if the motion had been sustained in the District Court, unless the Supreme Court in its judgment direct the cause to be dismissed, and the judgment to be wholly discharged." The effect of sustaining a motion in arrest of judgment in the District Court is stated in Art. 680 of the Code of Criminal Procedure. That article provides that " the effect of arresting a judgment is to place the defendant in the same position he was before the indictment or information was presented, and if the court be satisfied from the evidence that he may be convicted upon a proper indictment or information, he shall be remanded into custody, or bailed, as the case may require." This is the general rule as to the effect of sustaining a motion in arrest of judgment. Reflection on this subject would probably lead to the conclusion that such would not in every case be the effect of sustaining a motion in arrest of judgment. A case might be imagined for which the code has not undertaken to provide. If, for instance, two persons of

the same name should happen to be indicted in the same court, and through mistake one should be put upon trial upon the indictment against the other and convicted. In such a case a motion to arrest the judgment would be proper, but to sustain the motion would not have the effect to relieve the person who had been tried, from the obligation to answer the indictment which was really pending in court against him.

But in the present case, the motion in arrest is proper because the indictment which was found by the grand jury has undergone such alteration that it will not support a conviction, although it may have been a good indictment before it was altered. The effect of sustaining the motion in arrest in such a case as this, must therefore have the effect of placing the defendant in the same position he was in before the indictment was presented, because it is an adjudication by the court, that there is no good indictment against him upon which he may be legally convicted.

We therefore think it proper in this case to order that the judgment of the District Court upon the motion to set aside the verdict and to annul the proceedings on the indictment, be reversed, and that all proceedings on the indictment in this case be annulled, and that the District Court be commanded to hold the defendant, Calvin, committed until the grand jury of the county of Rusk shall have an opportunity to present a new indictment.

In thus disposing of this case, we think it proper to say that it has received our most careful consideration. The law of the case, as it is developed to us by the record, is precisely the same as if the accused were a free white man, and we cannot strain the law even "in the estimation of a hair," because the defendant is a slave, or because of any unusual features which the case presents. In all civilized countries, the law has always shown the most sacred regard for human life, and judicial tribunals, in the administration of the criminal law, have always deemed it proper to adhere with great strictness to established rules, wherever life or liberty is concerned. If courts could feel themselves at liberty to depart from principles and established rules, in order to hasten the punishment of even great offenders, such departures might

soon result in the destruction of those safeguards which, in accordance with the genius of free governments, have been provided for the lives and the liberty of men.

Reversed and defendant committed to await the action of the grand jury.