[No. 1689.]

H. M. Sharpe v. The State.

1. Murder — Indictment — Evidence — Charge of the Court — Cases Re-
viewed. — The indictment in this case charges that the homicide was com-
mitted with "malice aforethought, by shooting the deceased with pistols," etc.
*Held*, by a majority of the court, that this allegation charges any kind of mur-
der in the first degree which could be perpetrated by the means alleged, and
therefore the trial court correctly admitted evidence that the homicide was
perpetrated in an attempt to commit robbery, and correctly gave to the jury
a charge thereupon in the language of the statute. See the discussion of this

subject in the opinions of Willson, Judge, and White, Presiding Judge, and in the dissenting opinion of Hurt, Judge; and note the consideration and review of *Roach* v. *The State*, 8 Texas Ct. App., 491; *Tooney* v. *The State*, 5 Texas Ct. App., 163, and *Reyes* v. *The State*, 10 Texas Ct. App., 1.

2. SAME — CIRCUMSTANTIAL EVIDENCE.— CHARGE OF THE COURT should comprehend the law of circumstantial evidence only when the case of the State rests solely on that character of evidence.

3. SAME — EXPRESS MALICE.— That express malice may be evidenced by external circumstances is a part of its statutory definition, and a charge to that effect is not objectionable as being upon the weight of evidence.

4. SAME — JURY LAW — SPECIAL VENIRE — CASE STATED.— The indictment in this case was joint against the appellant and two others. A special *venire* was ordered, issued and executed in accordance with law. Upon a severance, the appellant's two co-defendants were first separately placed upon trial, and the persons named in the said special *venire* were, in each of said causes, tested and passed upon as jurors. After the trial of G., the co-defendant first tried, the court, in view of apprehended difficulty in securing a jury to try the appellant from the special *venire*, proposed, with the consent of appellant, to summon another special *venire* in his case; to which the appellant refused to agree. When the case against the appellant was called, he demanded the issuance of another special *venire;* which the court refused. *Held*, that the action of the court was correct; that the special *venire* had been regularly issued and executed, and, until it was exhausted or discharged with the appellant's consent, the court below had no power to order the issuance and execution of another *venire*.

5. SAME — CHALLENGE.— Two jurors on their *voir dire* answered that, although they had heard about the homicide, there was not established in their minds, from hearsay or otherwise, any conclusion as to the guilt or innocence of the accused, such as would influence their verdict. *Held*, that the jurors were qualified, and a challenge for cause was properly overruled.

6. SAME — FACT CASE.— See the statement of the case for evidence *held* sufficient to support a capital conviction for murder.

APPEAL from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

The indictment in this case was joint against the appellant and Walter Seargent and A. L. George, and charged them with the murder of E. Knesek, in Fayette county, Texas, on the 1st day of October, 1884. A severance was had, and, the appellant being alone upon trial, he was found guilty of murder in the first degree, and was awarded the death penalty.

Mrs. Anna Knesek, the widow of the deceased, was the first witness for the State. She testified that the deceased was killed in her presence in Fayette county, Texas, on the 1st day of October, 1884. About 8 o'clock on the evening of that day, three men came to the store of the deceased. The witness, who at that time was seated on a bench in front of the store, looked into the salesroom and saw two men,— the two whom she recognized on this trial as Seargent

and George.    Acting upon information then received from her little daughter, the witness stepped to the rear of the store and saw a third man standing near a neighboring branch, having in his hands, and working with it, an object, the character of which was unknown to the witness.    That man was the defendant Sharpe.    The witness returned to her seat on the bench in front of the store, and within a few minutes was followed by the defendant, who took his position in front of the witness.    He then deliberately removed his pistol from the rear to the front of his pants, and placed it between his waistband and body.    He then passed into the store, and he and the others engaged in a conversation which the witness could not hear.    She distinguished only the word "Hottentot," which had previously been the name of the settlement.    The witness was not personally aware that the parties described made any purchases in the store up to this time.

After a short time the man George came out of the store and took a seat on the door sill, which placed him immediately at the witness's side, the end of the bench on which she was sitting resting against the door-facing.    The defendant followed and took his position, standing, immediately in front of the witness, and Seargent took his position to the right of the defendant.    George then asked how far it was to Flatonia, and the defendant answered that it was a matter of three miles.    George then said: "G—d d—n it, have we so far to go to-night?"    Looking up he added: "What is that up there?" pointing to a house.    Defendant replied: "That is a bar-room," and the three men rode off, in the direction of Flatonia.

Just as the three parties disappeared the witness directed her daughter to close the store.    Before this could be done the three parties reappeared.    Witness's son John had in the mean time appeared on the scene.    If John Michael was present, witness did not see him.    George went immediately into the store.    The defendant and Seargent, who remained outside, began to annoy John, demanding to be provided with something to eat.    Witness ordered the defendant to desist, and told him that if he required something to eat, her daughter, who was in the house, would wait on him.    He and Seargent then joined George in the store.    Witness saw that her daughter was frightened, and walked slowly into the store and behind the counter, passing through the opening in the center of the counter.    She started up to the front end of the counter to the small apartment railed off as a postoffice, in which the safe, at that time open, was standing.    When witness reached a point about half

way between the opening in the counter and the safe, she was met by defendant with a pistol presented, who ordered her to give up on pain of death. Witness stopped a short while, when, seizing a favorable opportunity, she ran to the end of the counter behind the postoffice apartment, to secure a pistol from one of the shelves. This pistol could not be seen from the outside. While the witness was climbing up for the pistol, the defendant put his pistol through the lattice work of the postoffice inclosure, and told her that he would kill her if she did not stop. Witness secured the pistol with her left hand and jumped to the floor. As she reached the floor she closed the safe door with her right hand and secured the combination lock. She then stooped behind the counter and crawled along the floor towards the opening in the counter. Near the opening Seargent met the witness with his pistol drawn, caught her by the right arm and told her he would kill her if she moved. About this time the deceased, E. Knesek, came into the store through the back door. He passed rapidly up to Seargent and asked him what he was doing behind the counter, and ordered him out. He then caught Seargent's pistol and tried to disarm him. They scuffled through the counter opening, towards the front door, both trying to retain possession of the pistol. Defendant at this time caught the witness, placed his pistol against her mouth, and told her if she hallooed he would kill her. He then turned to where Sergeant and the deceased were scuffling, and fired, shooting the deceased through the left side. He placed his pistol against the deceased, and the discharge fired his vest.

Deceased did not fall at this fire, but he and Seargent continued to scuffle over the pistol, towards the door. When these two parties had got nearly to the door, George fired, shooting the deceased through the back. Deceased then threw up his hands and released Seargent's pistol, and Seargent fired, shooting him through the neck. Witness then saw George fire three times into the back room and she became blind and unconscious. The conflict was over when the witness recovered her consciousness. She stepped immediately to the front door and saw one of the parties riding off rapidly in the direction of Hallettsville. Her husband lay on the ground, dead, some three or four steps from the front door, his feet towards and his head from the door. She found the wound in his side so large that she easily inserted her handkerchief in her effort to staunch the blood.

The witness apprehended trouble when the defendants first came to the store, and before she went to the branch she went to her

dwelling in the rear of the store, and told her husband of the presence of the three suspicious characters. Deceased told her to go back to the store; that it was too early in the night for the men to attempt any violence. She went back and took her seat on the bench, and the subsequent proceedings transpired as narrated. On one Sunday about ten or twelve days before the murder of the deceased, the witness saw the defendant and Seargent at the store. George was not then with them. She first saw the parties, after the murder, in the Fayette county jail, and recognized each of them as the parties who conjointly perpetrated the murder. None of the parties demanded money or other article of value at the time of the killing, nor did they take anything. The deceased did not have a spigot or other article in his hand when he entered the store just before the killing, nor did he strike the defendant over the head with anything, while in the scuffle with Seargent. Witness saw no blood on the defendant's head or face at any time during the fight. None of the parties drew their pistols outside of the house when they returned after going towards the bar-room.

John Knesek was the next witness for the State. He testified substantially as did his mother, with the following exceptions: When the three parties came back the second time they called for something to eat. Seargent went into the store and ordered some salmon, which Julia gave him. Then the defendant, who was still outside, drew his pistol on the witness and his mother, and ordered them to give up. Witness then went into the store and was followed by all the parties remaining outside. George covered the witness and made him take a seat on a bench inside the store, and compelled him to retain it until the deceased came in and got into the scuffle with Seargent. While these two were scuffling, George turned from the witness and shot the deceased in the back. Witness thereupon shot George in the back, near the right shoulder, and ran into the back room. George turned and fired three shots at the witness as he ran through the door into the back room. When the parties first came to the store, George went in first and bought a bottle of whisky and two glasses of beer. He drank the beer, placed the bottle of whisky in his pocket, and then paid for his purchases. Seargent merely stood around during this time, and did not appear to know George. John Michael was at the store throughout the difficulty.

Cross-examined, the witness stated that all of the four shots which struck the deceased were fired in the house. He denied that, on the coroner's inquest, he testified that the deceased was shot

once in the house and three times outside. The transcript of his testimony on that proceeding represented him as so testifying, but it was not correct. Witness told Messrs. Duncan and Meerscheidt on November 25, 1884, that he shot George as he, George, turned to go out of the door.

John Michael was the next witness for the State. He testified that he went to Knesek's store about 8 o'clock P. M. on the night of the homicide. Mrs. Knesek, John and Julia Knesek, and three strangers were then in the store. Witness did not then know the strangers, nor does he recognize them now. One of the three men came in first, alone, and bought a bottle of whisky and two glasses of beer. A second man came in presently, and was soon followed by the third. Witness then went to Viviola's bar-room, remained a short time and returned to Knesek's. The strangers had left in the mean time, but almost immediately returned, got off of their horses and came to where witness and John Knesek were sitting on the bench in front of the house, and Mrs. Knesek standing in front of the door. They got into an English conversation with Mrs. Knesek and John, which witness, speaking only the Bohemian language, could not understand. He, however, heard the word "Hottentot" used. One of the parties drew a pistol and said something to Mrs. Knesek, when that lady ran into the store. Witness then started to Viviola's bar-room, but one of the men with a pistol forced him into the store and would not permit him to leave. Witness passed into the back room, out at the back door, and immediately back into the back room, and, as he got to the partition door between the store and the back room, he saw the deceased and one of the men scuffling. He then saw another of the men shoot the deceased in the left side. He then ran back into the shed room, and as he did so several shots were fired into that room through the door. Witness did not stop running, but returned after a short time. The strangers were then gone, and the deceased's body, with four bullet holes in it, was lying outside. Knesek was in his dwelling-house until about the time witness was ordered into the store by one of the men.

T. A. Edwards testified, for the State, that he saw the defendant and George at Knesek's store in Hottentot, on the 21st day of September, 1884.

A. J. Smothers, sheriff of Lavaca county, testified for the State that he had known the defendant about five years. Sharpe had once lived in Lavaca county, but had been gone about two years. Witness arrested defendant Sharpe at Round Rock, Williamson county, for the murder of E. Knesek, about fifteen days after the said mur-

der was committed. He had just boarded the train to leave, having a ticket to some distant point. Sharpe's father lived in Williamson county. Witness arrested Seargent about twenty miles below Columbus in Colorado county.

T. J. Rankin, sheriff of Fayette county, testified for the State that a few days after the killing of Knesek he advertised for Sharpe, Seargent and George, giving a description of each. He afterwards got George from the sheriff of Brown county at the Lampasas county jail. He examined George's body and found a recent gunshot wound, which had entered the shoulder behind and passed out under the arm.

Doctor J. W. Bedell was the only witness for the defense. He testified that he was a member of the coroner's jury and examined the body of the deceased. He found four gun-shot wounds on the body. Two penetrated the back, one the neck, and one the right side in front. There was no wound in the left side. One of the wounds in the back was just to the left of the spinal column. These wounds were all made by balls of the same size. Witness did not notice that the dead man's breast had been burned.

The motion for new trial raised the questions discussed in the opinion.

A motion for rehearing was filed after the affirmance of the judgment, which alleged the insufficiency of the evidence to support a conviction of murder of the first degree, either upon express malice or in an attempt to commit robbery. The motion was ably argued by the appellant's counsel, but was refused in an oral opinion.

*A. P. Bagby,* for the appellant. The first and second assignments of error relate to the action of the court in forcing defendant to select his jury from the *venire* originally drawn in the case. His objections thereto are fully set forth in his motion for a *venire de novo* and his bills of exception. It is for this court to say whether they are reasonable and should have been sustained. It is submitted that the provisions of the Code of Criminal Procedure, conferring upon one charged with a capital offense the privilege of having his jury selected from a special *venire,* drawn with carefully prescribed formality, and of which he is entitled to be served with a copy twenty-four hours before his trial, are intended to confer upon him a substantial right. To that right he is entitled in all its integrity. No maimed and imperfect part can be legally substituted for it. If it is legally his, he must have it in its entirety, *totus teres atque rotundus.* Did appellant enjoy the privilege which the

law conferred on him? A *venire* of sixty men had been drawn, from which eight jurors were selected for the trial of George, and three for the trial of Seargent, the others having been found disqualified or not acceptable to the parties. And it was after the *venire* had been twice subjected to the operation of being culled that appellant was called upon to select twelve men to whose judgments the case, involving the most momentous interests of a created being, was to be submitted. The spirit of the law of procedure in capital cases was clearly violated. If indeed the *letter* of the law justified the course adopted by the court below, it was because in an exceptional case the *reason* of the law ceased to operate, and *cessante ratione legis, cessat ipsa lex.* If for a case like this no special provision has been made, then the exercise of a little of that "discretion," to the use of which district courts are not disinclined, would have been most timely.

The third assignment is to the effect that the court erred in overruling appellant's objection to the competency of the two jurors Shropshire and Thomas. Appellant's counsel does not attempt, nor does he presume to suggest to this court, any argument as to what renders a juror incompetent. Guided by former decisions of this court, he submits that the differences between an *opinion* and an *impression*, hard to be drawn by those skilled in the use and criticism of language, amount, in the estimate of the average juror, either to nothing (which would be nearly correct), or that they amount to something entirely irreconcilable. Experience has convinced the writer that, in the minds of most jurors, "opinion" means an idea not to be overcome, and that "impression" means one which may be. About the different shades of meaning to be attached to the words, scholars and critics may differ; of their legal meaning, this court is the judge. Any opinion or impression which may prejudice the mind of a juror should disqualify him. Whence it was derived, or how it may be removed, are questions secondary to the main and original one. These jurors had derived their impressions from what they had heard and read, and they said on their *voir dire* that, by the same means, those impressions might be removed. Because it would not require sworn testimony to remove their impressions, the court adjudged them competent jurors. The idea upon which the court acted seems to the writer an extraordinary one. Upon a vast variety of subjects every educated man has an impression, more or less fixed. These impressions are affixed either by reading or by conversation, but howsoever impressed, many of them, derived either from reading or from any of the vari-

ous methods by which men are educated, become indelible. The opinions most fixed in the human mind are derived from reading. The court is respectfully referred to its opinion in the Rothschild case, in which an unbelieving Jew was not denied the benefit of those humane principles which we have derived from our holy religion.

The court charged the jury, in its definition of express malice, that it was "*evidenced*" by former grudges, antecedent menaces, and the like. This is a usual charge upon the subject, but it is submitted that it is error — *nisi prius* judges decide whether or not testimony is admissible; of its effect — of what it *evidences* or proves — our law permits them to say nothing. With the definition of express malice, the charge should have stopped. It should not have told the jury how express malice was to be proven. Because this charge is always given, it is no less error, unless, indeed, district judges, like old politicians, are to be permitted

> "To chew on errors past,
> And totter on in blunders to the last."

The next assignment of error relates to the failure of the court to charge the law of circumstantial evidence. The whole record must satisfy this court that the offense of which appellant was convicted was the offense of murder in the attempt to perpetrate robbery. Toward this offense the charge of the court directs the attention of the jury, not once, but, in its short and imperfect charge, on three several and distinct occasions. The attempt to rob was what was to affix the *degree* to the murder. Without that attempt, the murder was simply murder with implied malice. By circumstances surrounding the killing, the effort was made to prove the aggravating circumstances which made the homicide murder in the first degree. From these circumstances the jury must have concluded that there was an intent to rob. The actual offense proven by the drawing and presentation of pistols was the offense of aggravated assault. After Knesek was killed, and when all resistance was at an end, neither appellant nor his alleged confederates took or attempted to take from a storehouse, which was at their mercy, a single article of value. If there was an attempt to rob, it was proven by circumstantial evidence alone and not by acts directly indicating an attempt to rob. It would be impertinent to refer this court to the cases in which it has said that when circumstantial testimony alone is relied on for a conviction, an instruction upon its nature is an ingredient of the charge, without which a judgment of conviction will not be sustained.

To the consideration of the fifth assignment of error, appellant comes with a diffidence which is unaffected — nothing less than the solemn obligation which his duty to a client occupying the most calamitous position which the law can assign its subject,— could induce him to array his own views against the expressed opinion of this court. He begs that his attempt at argument be heard, not for himself but for his cause.

The indictment charges that appellant did, at the time and place alleged, " of his malice aforethought," kill and murder E. Knesek. The verdict of the jury was that appellant was guilty of murder in the first degree.

By article 606 of the Penal Code, murder in the first degree is defined. There it is established that as a *genus* of which the several species are distinctly enumerated: All murder by poison is murder in the first degree. All murder with express malice is murder in the first degree. All murder in the perpetration, or in the attempt to perpetrate, arson, rape, robbery or burglary, is murder in the first degree. In this case, under a common law indictment for murder, with malice aforethought, the court gave the charge which is assigned as error. The opinions of this court which relate to the subject are: *Mitchell* v. *The State*, 1 Texas Ct. App., 194; *Tooney* v. *The State*, 5 Texas Ct. App., 163; *Pharr* v. *The State*, 7 Texas Ct. App., 472; *Roach* v. *The State*, 8 Texas Ct. App., 479.

In but one of these cases, it is believed, is the question at issue directly presented or directly decided. In the Mitchell case it was held that, where express malice aforethought is alleged, there is no incongruity in showing that fact [express malice], and also the additional fact of robbery or burglary. There, by implication, it is held that the express malice must be proven. In Tooney's case it is only decided that, where the indictment alleges murder by poison, a charge relative to murder in the attempt to rob is error. The opinion in Pharr's case is indefinite. It simply says that "as to the motive or inducement which influenced the killing, that is more a subject of proof than pleading." In *Roach* v. *The State*, 8 Texas Ct. App., 491, the question presented in this case was distinctly met and decided. There the court says "that when a murder by violence and upon express malice aforethought is charged, then the prosecution may show, as part of the *res gestæ*, the perpetration or attempt to perpetrate robbery." Than this nothing can be more true; but does this corrollary which the court deduces from this proposition logically follow? It is in these words: "It follows that the evidence, being of a character to show that the murder

was committed in the attempt at the perpetration of robbery, the court did not err in the portion of the charge complained of."

Against this view of the law, the following ideas are respectfully submitted:

1. When one is charged with an offense, all the facts constituting the *res gestæ* may be proven to show the nature of the transaction. They are useful to show whether or not the accused is guilty of the specific offense alleged, but do not authorize the court to give a charge that he may be convicted of an offense proven, it may be, by the *res gestæ*, but different from that wherein he is charged.

2. Murder with express malice is a species of murder of the first degree. Murder with intent to rob is also a species of murder of the first degree, and may be committed under circumstances which show the element of express malice to be entirely absent. Therefore, when one is charged with murder upon express malice, a charge that he may be convicted of murder in the first degree, simply because the murder was committed in the attempt to rob, is illegal. Every defendant is entitled to know the *nature* and *cause* of the accusation against him. Express malice and the intent to rob are not necessarily concomitant.

The preservation and maintenance of legal principles are far more important than the fate of any individual. To punish any man otherwise than by due course of law would be cruelty; to execute him would be murder. If appellant has been convicted illegally, his counsel relies confidently upon this court to correct the wrong which has been done him; in any event, he feels that his duty has been done, and with the judgment of this court he will be satisfied.

*J. H. Burts*, Assistant Attorney General, for the State.

OPINION OF WILLSON, JUDGE.

Willson, Judge.  I. This appeal is from a conviction of murder in the first degree, the penalty assessed being death. It is charged in the indictment that the homicide was committed with " malice aforethought " by shooting the deceased with pistols. Evidence was admitted, over the objections of the defendant, which tends strongly to show that the homicide was committed in an attempt by defendant and two others to perpetrate the crime of robbery. After stating in the charge the general statutory definition of murder, the court instructed the jury that all murder committed in the perpetration of, or in the attempt to perpetrate, robbery, is murder in the first degree, and then proceeded to define robbery, and an attempt to rob.

It is earnestly and ably argued by defendant's counsel that this charge as to robbery, and attempt to rob, is erroneous. In support of this position counsel submits the following propositions:

"1. When one is charged with an offense, all the facts constituting the *res gestæ* may be proven to show the nature of the transaction. They are useful to show whether or not the accused is guilty of the specific offense alleged, but do not authorize the court to give a charge that he may be convicted of an offense proven, it may be, by the *res gestæ*, but different from that wherewith he is charged.

"2. Murder with express malice is a species of murder of the first degree. Murder with intent to rob is also a species of murder of the first degree, and may be committed under circumstances which show the element of express malice to be entirely absent. Therefore, when one is charged with murder upon express malice, a charge that he may be convicted of murder in the first degree, simply because the murder was committed in the attempt to rob, is illegal. Every defendant is entitled to know the *nature* and *cause* of the accusation against him. Express malice and the intent to rob are not necessarily concomitant."

Counsel for defendant concedes that in *Roach* v. *The State*, 8 Texas Ct. App., 491, the precise question now presented was distinctly met and decided. In that case the indictment charged that the homicide was committed with *express* malice aforethought. Evidence tending to disclose a robbery as the motive inducing the homicide was admitted, and the court, as in this case, charged the jury "that all murder committed in the perpetration, or in the attempted perpetration, of the crime of robbery is murder in the first degree." It was held that there was no error in admitting the evidence as to the robbery, nor in giving the charge in relation thereto.

In the opinion in that case the preceding cases bearing upon the question are cited and reviewed at length, and the conclusions of the court are announced as follows: "When express malice is alone charged, the pleader may show, in support of the indictment, not only violence done to the person, but robbery, or an attempt to perpetrate robbery, or any other of the specific exceptional modes named; because they are not inconsistent with, but, on the contrary, would be legitimate for the purpose of establishing the express malice aforethought. When a murder by violence and upon express malice aforethought is charged, then the prosecution may show, as part of the *res gestæ*, that it was also done (if such were the fact) in the perpetration, or in the attempt at the perpetration, of either arson, rape, robbery or burglary. It follows that the evidence in

this case, being of a character tending legitimately to show that the murder was committed in the perpetration, or in the attempt at the perpetration, of robbery, the court did not err in the portion of the charge complained of, but the same was a part of the law as made necessary by the evidence adduced in the case.

It will be observed that in the Roach case (*supra*) the indictment alleged that the homicide was committed with "*express* malice aforethought," while in the case before us the allegation is "malice aforethought." In the opinion of the writer the conclusions of the court above quoted, as to the charge of the court, are not entirely consistent with the doctrine stated in *Tooney's* case, 5 Texas Ct. App., 163. In Tooney's case, it is correctly said: "A charge, to be legal, that is, to 'present the law applicable to the case,' must meet and be limited by the case as set forth and pleaded in the indictment. The charge must conform to and correspond with the allegations. To go outside of and beyond them, in submitting other issues, is not only calculated to mislead the jury, but also calculated to injure the rights of the defendant, by making them depend upon matters he could not be prepared to meet, because he was not notified that they would be urged against him." And in accordance with this rule, in that case, where the indictment alleged a murder by poisoning, it was held error for the court to charge as to a murder committed in the perpetration or attempted perpetration of robbery. Murder with *express* malice is one of the specific kinds of murder in the first degree named in the statute, as much so as murder by poison, starvation, torture, or in the perpetration or attempted perpetration of some one of the crimes mentioned. It seems to the writer that where the pleader unnecessarily alleges that the murder is one committed with *express* malice, he thereby alleges one of the distinct species of murder in the first degree, and to that particular kind of murder the charge of the court should be confined. Such an allegation, in my opinion, excludes every other species of murder in the first degree, and a conviction for that species and no other can be had in such case.

But, however this may be, that question does not arise in this case, because the indictment alleges none of the *species* of murder in the first degree, but alleges murder in the first degree generally, that is, a homicide with malice aforethought, thus alleging in effect all kinds or species of murder in the first degree, that could be committed by the means alleged, that is, by shooting. (See *People* v. *Soto*, 63 Cal., 165.) It is, therefore, the opinion of a majority of the court, that in this case it was not error to admit evidence to prove

an attempted robbery, nor to instruct the jury in relation thereto in the statutory language made use of by the court in its charge.

II. It is further objected to the charge that it does not instruct the jury as to the law of circumstantial evidence. This objection is clearly not tenable, because the evidence establishing defendant's guilt is direct and positive, and not of a circumstantial character. The law of circumstantial evidence should not be charged except in cases where the State relies solely upon that character of evidence to obtain a conviction. (*Hart* v. *The State*, 15 Texas Ct. App., 202; *Buntain* v. *The State*, Id., 515.)

III. Again, it is objected to the charge that it instructed the jury that express malice may be *evidenced* by external circumstances, etc. It is contended that this is a charge upon the weight of evidence; that the court should have defined express malice, and then left the jury to determine as to how it might be proved or evidenced. We cannot concede the correctness of this objection. To tell the jury that a certain fact may be inferred upon proof of certain other facts is not always a charge upon the weight of evidence, and is not, in our opinion, an objectionable charge in cases like this. This charge is in the exact language of the law, and is in fact a part of the definition of express malice as given by all authors on criminal law. It has almost invariably been given in murder trials, and has repeatedly passed the scrutiny of the bench and the bar, unquestioned. (*Jordan* v. *The State*, 10 Texas, 479; *McCoy* v. *The State*, 25 Texas, 33; *Plasters* v. *The State*, 1 Texas Ct. App., 673; *Cox* v. *The State*, 5 Texas Ct. App., 493; *Summers* v. *The State*, Id., 365; Whart. on Homicide, § 671; 1 Whart. Cr. Law, § 381.)

IV. Defendant was indicted, jointly with two others, for the murder of which he was convicted. A special *venire* for sixty persons to serve as jurors in the case was ordered, issued, and executed .in accordance with the statute. When the case was called for trial a severance was had, and the other two defendants, each separately, were tried before this defendant was tried, and in said previous trials the persons summoned on said special *venire* were tested and passed upon as jurors in each of said causes. When this case was called for trial, the defendant moved the court to require another special *venire* to be issued for persons to serve as jurors in this case. This .motion the court declined to grant. In an explanation appended to the bill of exception presenting this question, the trial judge says: "After the trial of the co-defendant George (the defendant first .tried), recognizing the difficulty or uncertainty of obtaining a jury, considering the peremptory exceptions of the parties as exhibited in

the trial of George, the court proffered, if the defendant Sharp would agree, to order another special *venire*, but the defendant declined to so agree," etc. We perceive no error in this action of the court. The special *venire* had been regularly issued and executed in the case, and until it was exhausted, or discharged by the defendant's consent, the court had no power to order the issuance and execution of another *venire*. (*Harrison* v. *The State*, 3 Texas Ct. App., 558.)

V. Defendant's challenge of the jurors Shropshire and Thompson, for cause, was properly overruled. It appeared from their answers that, while they had heard and read about the homicide, there was not established in their minds, from. hearsay or otherwise, any conclusion as to the guilt or innocence of the accused, such as would influence their verdict. We think the jurors were qualified to try the case. (*Ellison* v. *The State*, 12 Texas Ct. App., 557.)

We have discussed all of the supposed errors complained of by the defendant, and to each of which, as well as to the entire record, we have given careful consideration. We have discovered no material error in the proceedings and conviction, and the evidence and the law demand that the verdict of the jury should stand, and that the defendant should suffer the punishment assessed against him for the atrocious murder of which he is undoubtedly guilty. The judgment is affirmed.

*Affirmed.*

[Opinion delivered January 31, 1885.]

### DISSENTING OPINION OF HURT, JUDGE.

Hurt, Judge. H. M. Sharpe, the appellant, stands convicted of murder in the first degree, with the penalty of death awarded against him. The conviction is illegal and unconstitutional unless he has been tried upon an indictment by which he is charged with all of the component parts — elements — of murder of the first degree. We must look, therefore, to the indictment, and it alone, in order to ascertain if such a charge is made against him.

By the indictment it is charged that appellant, with a pistol, did unlawfully and with malice aforethought kill and murder one E. Knesek. Now, this is equivalent to a charge in *terms* that the homicide was committed with express malice, or the indictment is most evidently insufficient, and the conviction of murder of the first degree has no support in allegation.

As an original proposition, viewed alone in the light of principle, the writer does not hesitate to say that the allegation that the

homicide was "with *malice aforethought*" *is not equivalent* to a charge that the killing was *upon express malice*. After a very careful reading of all the arguments accessible in support of the affirmative of this proposition, I am impelled to the conclusion that the argument of Mr. Bishop upon this question has not been, nor can be, answered. (2 Bishop's Crim. Proc., §§ 561–587, inclusive.)

However, I have yielded to this legal fiction and followed the decisions of our Supreme Court and the Court of Appeals, and sanctioned conclusions of murder of the first degree upon indictments which simply charged that the homicide was with "malice aforethought," not because I thought these opinions were at all in harmony with the rules and principles of criminal pleadings, but, believing the question to be settled, I was willing to let it rest.

We will follow this matter no further, but return to the case in hand. We have stated that unless the charge "that the homicide was with malice aforethought" is equivalent to a charge of killing with *express malice*, this conviction is without support in allegation, and is of necessity unlawful and in direct violation of the constitutional guaranty belonging to the citizen.

Again, if the prisoner is charged with the crime of murder of the first degree, it is by virtue *alone*, and for no other reason, of the allegation in the indictment that he shot and killed E. Knesek "*with malice aforethought.*" And as this charge is equal to the allegation that he shot and killed E. Knesek with *express* malice, the prisoner is charged by the indictment of murder of the first degree alone for the reason that he killed deceased with *express* malice.

If this last proposition is incorrect, then we say, with supreme confidence, that the prisoner is not charged with murder of the first degree at all.

In *Bohannan* v. *The State*, 14 Texas Ct. App., 271, the defendant was charged with killing J. L. Knox with malice aforethought, by shooting him with a gun, and this court sustained a conviction of murder of the first degree because the proof showed a homicide upon express malice. Hence we ask, in the name of principle, reason and common sense, how this court could affirm a conviction for murder of the first degree unless the defendant had first been charged by indictment with this degree of murder?

Sharpe, being charged by the indictment with the crime of murder of the first degree, because he killed E. Knesek with express malice, must this charge be established by the State by proof that he *did kill deceased with express* malice? The grand jury informed the defendant by indictment of the nature and cause of the accusa-

tion against him. He was informed that he had committed the crime of murder of the first degree, because he had, with a pistol, unlawfully and with his malice aforethought killed and murdered E. Knesek; and, as we have seen, this is a charge of murder upon *express* malice. The information furnished the defendant by the indictment was that he had committed murder of the *first degree*, because he had unlawfully, with a pistol, shot and killed E. Knesek with his *express malice aforethought.*

The prisoner thus being informed of the nature and cause of the accusation against him, must the State establish that this information is true by proving that the defendant verily *did* unlawfully shoot and kill E. Knesek with his *express* malice aforethought? In the light of the decisions of this court upon this question, is it required of us to submit an argument to sustain the affirmative of the question propounded? We think not; for the most simple and plainest principles of criminal pleadings and proof furnish a conclusive answer to this question. One question, we think, will suffice. Wherefore the necessity of informing the defendant of the nature and cause of the accusation against him, unless the State is held to the nature and cause of which by the indictment he has been informed?

Appellant was told by plain and intelligible language that he had committed the great crime of murder of the first degree because he had, with a pistol, unlawfully shot and killed E. Knesek, with his express malice aforethought. He was thus informed of the nature and cause of the accusation against him. Upon this accusation he was arraigned, and to this he pleaded not guilty, and upon the trial he came prepared to meet the accusation, as alleged in the indictment, and no other. He was informed that he shot and killed E. Knesek; this he denied and was prepared to meet; that he killed him with his express malice aforethought; this he denied and was prepared to meet. Was he informed of anything else, and was it possible *from the information given him by the indictment* for him to be *prepared to meet anything else?* Most evidently not.

My brother Willson, however, takes a different view of the purport of the allegation " with malice aforethought." He concedes that, if the indictment had charged that the homicide was with express malice aforethought, the State under such a charge would be held to prove that the murder was of the first degree, by reason of express malice aforethought alone; and that the defendant's guilt of *murder of the first degree* could not be made by the charge of the court to depend upon anything else. He says: " But how-

ever this may be, that question does not arise in this case because the indictment alleges none of the species of murder in the first degree, but alleges murder in the first degree generally, that is, a homicide with malice aforethought, thus alleging in effect all kinds or species of murder in the first degree that could be committed by the means alleged, that is, by shooting." From this quotation it will be seen that murder of the first degree is divided into different species, and that when one of the species is charged in the indictment the proof and charge of the court must ·be confined to that. But, as the charge "*malice aforethought*" represents all murder of the first degree with all of its species, the proof and charge of the court are not restricted to any of the species, and are only limited to the means or weapons alleged in the indictment.

Now, we do know that *malice aforethought* (all of it) is an absolutely necessary ingredient of murder of the *second* degree. We could enlarge here, but have not the time.

Again, it appears from the doctrine of Judge Willson that we have a murder of the first degree represented or charged by the allegation with "malice aforethought," which stands as the genus of all murder of this degree, and that there are species of this degree of murder. Now, we would most seriously ask of what elements is this genus murder composed? Are its component parts the same as those constituting murder of the *first degree by express* malice aforethought? If so, the latter is not a species. Does it contain more elements than murder upon *express malice* aforethought. If so, what are they? Or is this offense (genus murder of the first degree) composed of all the elements entering into each and all of its species? If so, we doubt the ability of the writer, or of any other person, to draw a good and sufficient indictment for this offense.

Now we believe, and think we know, that the plain and simple truth is that murder of the first degree can be committed in eight distinct ways; just as an aggravated assault and battery may be committed in divers distinct ways; and that the procedure, so far as the question at issue is concerned, should be the same; that is, the indictment should select that which is indicated by the evidence. To illustrate: if the evidence shows a case of murder of express malice, charge this; or if the evidence tends also to show a murder in the perpetration or attempt at the perpetration of arson, rape, robbery or burglary, or by poison, starving or torture, charge murder by express malice, and insert counts for murder by poison, starving or torture, or in the perpetration or attempt in the perpetration

of arson, rape, robbery or burglary, as is suggested by the evidence.

We are not to be understood as intimating that under an indictment which charges a murder by express malice, proof that it was committed by poison, starving or torture, or that it was committed in the perpetration or in the attempt at the perpetration of the offenses named in the Code would not be admissible.

We have digressed from the main issue far enough; let us return to Judge Willson's theory. He says that the allegation that the killing was with "malice aforethought" charges murder of the first degree generally. With the highest regard for the opinion of my brother, permit me to say that this proposition cannot possibly be correct, except upon one theory, which is that a charge of the greater includes the lesser degree. But the lesser degree must be charged by alleging 'its elements, and no more, or by alleging the higher degree which includes the lesser.

Now, if it is necessary to constitute murder of the *second* degree that the homicide be committed "with malice aforethought," how is it possible to include this degree of murder by charging a murder with malice aforethought? A. is charged with killing B. with malice aforethought; this is equal to and in fact is a charge that A. committed murder of the first degree. Why is A. not charged with murder of the second degree, not by being included, but directly? We can be extricated from this dilemma only by holding that the allegation that the homicide was with malice aforethought charges a murder upon express malice aforethought. That the purport of this allegation is the same as if the allegation had been "that the homicide was with express malice aforethought," in terms.

But, let us concede that our views may be erroneous upon this branch of the subject, nevertheless the main and vital question recurs, which is, was the defendant informed by the indictment that his life would be demanded because he murdered E. Knesek "in the perpetration or in the attempt at the perpetration of the crime of robbery?" It is conceded by Judge Willson that, if the indictment had charged the murder upon express malice aforethought, the State would have been confined to this allegation, and the guilt of the defendant of murder of the first degree made to depend alone upon proof of express malice aforethought.

This proposition, we have no doubt, can be sustained upon the ground that to make the defendant's guilt of murder in the first degree depend upon any other matter except express malice would be a variance and departure from the allegation, to wit, that the

defendant was guilty of murder of the first degree because he murdered the deceased with *express* malice aforethought. To this we agree. But that is not the question. Did this indictment give the prisoner the slightest intimation that he had murdered the deceased in the perpetration or in the attempt at the perpetration of robbery, is *the question.* He was informed that he shot and killed E. Knesek with malice aforethought. In this there is not the most remote hint that his life would be demanded because he had shot and killed E. Knesek in the perpetration or in the attempt at the perpetration of robbery.

As a murder may be committed in the perpetration or in the attempt at the perpetration of robbery without necessarily being upon express malice, was not the *fact* that the murder was committed under such circumstances of the highest and most awful importance; and of fearful consequences to the defendant? A. murdered B. without express malice — penalty not death. A. murdered B. without express malice, but in the perpetration of robbery,— penalty (in this case) death. The question of fact, namely, was the murder in the perpetration of robbery, is therefore of superlative importance, for upon its decision the *prisoner is to live or die.*

This being the case, did not the plain principles of common justice require of the State to tell him in plain language that he *thus* murdered the deceased? But it may be insisted that he was informed that he murdered the deceased in the perpetration of or in the attempt at the perpetration of robbery by the allegation that " he killed him with his malice aforethought." In answer to this we most respectfully submit Mr. Bishop's reply to quite a similar proposition: " This is informing a defendant of the 'nature and cause of the accusation against him' with a vengeance." The indictment informed the defendant that he had killed and murdered E. Knesek with malice aforethought; therefore, it is contended that he can legally be convicted of murder of the first degree if the homicide is upon express malice, or the murder be in the perpetration or in the attempt at the perpetration of robbery. If so, such an indictment charges not only murder upon express malice, but a murder in the perpetration or in the attempt at the perpetration of robbery, rape, arson and burglary. Such an indictment is a complete dragnet, catching in its folds all murder of the first degree, with their distinct elements. We had thought that the provision of the Constitution which guaranties to the citizen the right to be " informed of the nature and cause of the accusation against him," was eminently a practical matter, and that the nature and cause of

the accusation against him should be "set forth in plain and intelligible language."

In this case the State demanded the life of a citizen because he murdered a fellow-citizen in the perpetration of robbery. He was informed that he murdered his fellow-citizen with malice aforethought. Was this informing him in plain and intelligible language that the murder was in the perpetration of robbery? If so, he was as *plainly informed* that the murder was committed in the perpetration or in the attempt at the perpetration of arson, *rape and burglary*, if the means or weapon used is the same as alleged in the indictment. This being the information furnished him by the indictment, he must prepare to meet a case of murder of the first degree by reason of the fact that it was committed in the perpetration or in the attempt at the perpetration of *rape, arson, burglary and robbery as well as upon express malice.* All of these offenses, to wit, arson, rape, burglary and robbery, are composed of distinct elements. In order to make a thorough defense, therefore, the component parts of each should be understood, for if the murder was not committed in the perpetration or the attempt at the perpetration of one of the offenses *technically*, the defendant could not legally be convicted of murder of the *first degree* unless express malice be shown. And as the main object to be attained in informing the defendant of the nature and cause of the accusation against him is to enable him first to understand and then to prepare to meet such accusation, great indeed is the necessity of informing him in such manner (by plain language) that he may with ease and certainty understand the charge against him. This should be treated as a plain practical matter. If so, is it reasonable to conclude that a person of average capacity would ever dream from the information furnished him by the indictment that he would be called upon to meet a charge of murder in the perpetration of arson, rape, burglary and robbery,— each and all of these matters? To thus conclude is not only unreasonable but preposterous.

A plain and, as we think, a perfect analogy is the following: The use of any unlawful violence upon the person of another with intent to injure him is an assault and battery. The unlawful killing of a reasonable creature in being is murder. This assault or battery becomes aggravated when committed under certain named circumstances. Murder becomes of the first degree when committed under certain named circumstances. To convict of aggravated assault or battery, the indictment must charge the circumstances of aggravation. To convict of murder of the first degree the circumstances

which raise the murder to that degree must be alleged. The *alleged circumstances* of aggravation must be proved, to convict of the aggravated offense. The *alleged circumstances* (those which elevate the murder to the first degree) must be proved, to convict of murder of the first degree. Proof of circumstances of aggravation *not alleged* will not sustain a conviction for aggravated assault and battery. Proof of circumstances not alleged, though the circumstances establish a murder of the first degree, will not sustain a conviction of murder of the first degree.

That the above observations relative to the pleadings and proof in cases of aggravated assault or battery are strictly correct is established by an unbroken line of decisions of this court. Now, then, if this be the law in misdemeanors, much stronger and more cogent the reasons for the rule in cases of life and liberty!

I am of the opinion, therefore, that the court erred in charging the jury that they should convict the defendant of murder in the first degree if they believed that the murder was committed in the perpetration or in the attempt at the perpetration of robbery; because the prisoner had not been informed of this matter by the indictment.

I think the judgment should be reversed and the cause remanded; and that another indictment should be preferred, charging the murder to have been committed in the perpetration or in the attempt at the perpetration of robbery.

[Opinion delivered January 31, 1885.]

#### OPINION OF WHITE, PRESIDING JUDGE.

WHITE, PRESIDING JUDGE. Our Constitution guaranties to the accused in all criminal prosecutions "the right to demand the nature and cause of the accusation against him" (Const., art. I, sec. 10), and our statute provides that in all indictments the offense charged must be "set forth in plain and intelligible words." (Code Crim. Proc., art. 420, sub-div. 7.)

For three centuries and a half, that is, since the enactment in England of the Statute 23 Hen. 8, chap. 1, § 3, in the year of our Lord 1531, it has been almost uniformly held in the tribunals of all English-speaking people that an indictment for murder punishable with death sufficiently charged the descriptive elements of the offense when it alleged that the crime had been committed by the accused "feloniously, wilfully (or unlawfully) and of his malice aforethought." If the constant and almost daily use of this expression for over three

centuries has failed to give to it a common acceptation which is "plain and intelligible," then, indeed, may we doubt and despair that usage can ever give to any expression or set phrase of speech a common meaning and acceptation, or render it "plain and intelligible."

This same expression, derived from the common law and thus sanctified by age and use, is declared to be the essential element and characteristic of murder, in our statute which defines the crime as one committed "unlawfully" and "with malice aforethought, either express or implied." (Penal Code, art. 605.) When so incorporated into the statutory definition it must have been with full knowledge of all that the words or term "malice aforethought" meant and implied. What did they mean? At common law, murder without benefit of clergy and punishable with death; with us, the same thing, that is, murder of the first degree, the highest degree, and punishable with the highest penalty,— a murder which embraces all other kinds whether the "malice aforethought" be express or implied.

It is a general rule of criminal pleading having but few exceptions that an indictment is always sufficient if it charges the offense in the statutory words defining it. The crime of murder has never been held to furnish in this State an exception to the rule. On the contrary, that the common law form is sufficient under our statute, it is said cannot now be questioned. (*Perry* v. *The State*, 44 Texas, 473; *Gherke* v. *The State*, 13 Texas, 573; *White* v. *The State*, 16 Texas, 206; *Wall* v. *The State*, 18 Texas, 682; *McCoy* v. *The State*, 25 Texas, 37; *Calvin* v. *The State*, 25 Texas, 793; *Perryman* v. *The State*, 36 Texas, 321; *Henrie* v. *The State*, 41 Texas, 573; *Tooney* v. *The State*, 5 Texas Ct. App., 163; *Dwyer* v. *The State*, 12 Texas Ct. App., 535; *Peterson* v. *The State*, 12 Texas Ct. App., 650; *McElroy* v. *The State*, 14 Texas Ct. App., 271; *Bohannon* v. *The State*, 14 Texas Ct. App., 271; *Walker* v. *The State*, 14 Texas Ct. App., 609; *Moore* v. *The State*, 15 Texas Ct. App., 1.)

"It is agreed on all hands," says Mr. Bishop, "that the words 'malice aforethought' are essential in an indictment for murder." (2 Bish. Crim. Proc. (2d ed.), § 544.) Mr. Bishop, however, in quite an exhaustive argument referred to by Judge Hurt in his opinion herein, rather dogmatically contends that "malice aforethought" does not charge murder of the first degree as contradistinguished from murder of the second degree, and winds up his labored discussion by saying: "On the whole question the majority of our American courts, reasoning in the muddled, confused and contra-

dictory way already described, have held that under our entire statutory provisions, construing those which relate to the procedure with the rest, one charged with a felonious killing of 'malice aforethought' merely may be convicted of murder of the first degree. On the other hand a respectable minority, both in numbers and ability, looking more carefully into the question, have held that the indictment, to justify a conviction for murder in the first degree, must allege whatever the statute makes essential to this degree of murder; and they have not seen that an averment of 'malice aforethought' sets out for example "*deliberately premeditated* malice aforethought,' when the sole purpose of the statute was to distinguish between the two, which it does in these express terms, and provides for the latter a punishment heavier than the former." But, says the learned author: "It is agreed on all sides that, whichever form of the indictment is employed, the defendant may be convicted on it for murder of the second degree." (2 Bish. Crim. Proc., §§ 584, 585, 586.)

It were doubtless a profitless business for us at this day, and in its settled attitude, to enter anew upon the discussion of this question. Mr. Bishop admits that the weight of authority in numbers at least is against him, and we have shown how the decisions upon it are in our own State. We prefer to stand by these authorities, which, Mr. Bishop will pardon us for observing, do not appear to us near so muddled either in their reasoning or conclusion as is the strained and labored argument he has made to upset them. At all events, the doctrine enunciated, it seems to us, is easily understood, and that is, that an indictment alleging a murder committed with "malice aforethought" charges and will sustain a conviction for murder in the first degree, and not only so, but under our Code will sustain a conviction for all lesser degrees of culpable homicide. (Code Crim. Proc., art. 714, sub-div. 1.)

Does it charge murder upon express malice? Most unquestionably, under the decisions, for they are irreconcilable upon any other conclusion. Does it charge a murder committed in the perpetration, or in the attempt at the perpetration, of arson, rape, robbery or burglary? In our opinion most clearly, and, further, that to the same extent it would embrace and charge a murder by poison, starving or torture.

"All murder committed by poison, starving, torture, or with express malice, or committed in the perpetration or attempt at the perpetration of arson, rape, robbery or burglary is murder of the first degree." (Penal Code, art. 606.) "Malice aforethought" is

the synonym of murder of the first degree, no matter how committed, or by which of the enumerated modes committed. It is the essential element of all murder,— the genus to which all the others as mere species belong. It embraces all, includes all, these various modes or species, and when thus alleged in, it may be, general terms, any of the specific modes or species may be proven to sustain the allegation. Under our decisions, "malice aforethought" is the correlative — the counterpart — of "express malice." The terms are convertible; they mean exactly the same thing; this is the common acceptation and understanding, and this is what the words with us now clearly and certainly import. Aforethought malice, etymologically considered, means preconceived malice — malice engendered when the mind was sufficiently cool, sedate and deliberate as to understand the nature and consequences of the act designed and intended to be accomplished. "Express malice" means and is the same thing; nothing more, nothing less.

Why are murders committed by poison, starving, torture, or in the perpetration or attempt at the perpetration of arson, rape, robbery and burglary, murder of the first degree? Simply because it is impossible they could be committed except upon "malice aforethought," or "express malice." Our statute has not elevated them either in character or degree by declaring that such murder should be murder of the first degree. It is on account of the aggravation and heinousness of such complex murders that the law has wisely provided that there shall be, as to them, no second degree, nor milder punishment than that awarded to murder of the first degree. And the sole object of article 606, as we believe, was to declare this important fact,— to make murder committed in any of these exceptional modes *per se* murder of the first degree and subject to the highest punishment known to the law.

It is true that, if the design be not to kill the deceased or inflict upon him some serious bodily injury, but to commit some other felony, it has been held that the killing will not be on express malice. This rule cannot be applied to the conditions enumerated in article 606, because it is expressly declared otherwise by the statute. Even at common law, this rule was subject to the exception that, if one or more persons enter upon the commission of a felony in such a way as to show a preconceived resolve to kill or do great bodily harm to all or any one who may oppose the design, the murder was held to be upon express malice. (4 Blacks. Com., 200.)

In the view we take of article 606, it does not declare and never

was intended to declare that the different modes mentioned were separate, distinct, and independent substantive offenses, either one of which would be a murder differing in character, degree or punishment from any other murder of the first degree; but that the sole object was to specify and enumerate the classes, modes, types, or species if you please, of the one general class or genus — murder — a murder with " malice aforethought," and of the first degree, as distinguished from all other murder, which would be murder of the second degree.   " Express malice " or "malice aforethought " is evidenced and proved by external circumstances, discovering the inward intention; and these several types, classes, modes or species are at last but evidences,— external evidences,— of the malice aforethought, the express malice, of murder in the first degree.   They are each and all embraced in the charge " malice aforethought," and either or any of them may be adduced in evidence to support the charge.

It is a rule of criminal as well as of civil pleading that the pleader is never required to plead his evidence.   All that is necessary to the sufficiency and validity of an indictment is that every element on which the punishment for the offense depends must be so averred that the accused may be informed of the nature of the crime and the punishment to which he is liable.   An indictment thus charging the crime fully apprises and notifies the accused " of the nature and cause of the accusation against him."

In the indictment in the case under consideration the murder was charged to have been committed with malice aforethought and by shooting the deceased with pistols.   The time when, place where, and party killed were all explicitly stated.   Was he notified of the crime and every element on which his punishment depended?   What did this charge tell him?   It told him, as our authorities in Texas hold, and as has been held for three and a half centuries, " you killed deceased of your malice aforethought, which is your express malice, and that charge, if proven, carries with it the punishment of murder in the first degree."   But his objection is, " you did not notify me that you intended to hold me liable by proving that I killed the deceased in the perpetration or attempt at the perpetration of robbery."   Our answer is, " the charge is equivalent to a charge of murder on express malice; if so, it notifies you of all the elements on which your punishment depends.   You are told when, where, and who it was you murdered, and that the State can and will prove it by showing, as she has the right to do, all the attendant external circumstances,— the *res gestæ*,— of the diabolical

transaction; all of which are fully known to you, whether these circumstances disclose that you committed the crime either in the perpetration or attempt at the perpetration of arson, rape, burglary or robbery; for you may have committed it in any of these modes under the charge preferred against you, none of them being inconsistent; but each and all entirely consistent and in perfect accord and harmony with the charge. We have the right and shall prove everything you did and were doing when you murdered your victim. And if any such incentives to the foul deed as the perpetration or attempt at the perpetration of arson, rape, robbery or burglary are proven to have actuated your crime, then the court charging, as it is required to charge, the law applicable to the facts, will charge the jury that a murder thus committed is *per se* murder in the first degree; because the law says so, and because that is the crime charged against you in the indictment."

I fully concur in the opinion of my brother Willson, that this indictment will support the conviction for murder in the first degree. I further concur with him most fully in the conclusion that, under the charge in this indictment and the evidence adduced on the trial, the court properly charged the jury that a murder committed in the perpetration or attempt at the perpetration of robbery was murder of the first degree, and that they could and should convict defendant of murder of the first degree if they found from the evidence he had committed it under such aggravating circumstances.

As descriptive of the identity of the offense, had the indictment, with unnecessary particularity, have charged that the murder was committed in the perpetration or attempt at the perpetration of robbery, then, indeed, the State would have been held and required to prove a murder committed under those precise circumstances and none other. (*Warnington* v. *The State*, 1 Texas Ct. App., 168; *Tooney* v. *The State*, 5 Texas Ct. App., 163.)

Where, however, the offense is charged to have been committed with "malice aforethought," or with "express malice," which latter we have endeavored to show is but the correlative, equivalent, convertible term or synonym for "malice aforethought," then the writer is of opinion that proof of, and a charge of the court upon, murder committed in the perpetration or attempt at the perpetration of arson, rape, robbery or burglary would be in consonance with the indictment, and admissible and legitimate under it. So believing, he therefore still holds and insists upon the doctrine announced in *Roach* v. *The State*, 8 Texas Ct. App., 479, and *Reyes* v. *The State*, 10 Texas Ct. App., 1.

With this discussion of my individual views of the main question involved in this case, and fully concurring in the other questions decided and the general result arrived at by Judge Willson as to the disposition of the case, I am of opinion the judgment should be in all things affirmed.

*Affirmed.*

[Opinion delivered January 31, 1885.]